Submitted August 29, 2012, remanded for resentencing; otherwise affirmed October 30, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

OVID JOHN TEIXEIRA,
*Defendant-Appellant.*

Lincoln County Circuit Court
100276, 100301;
A146865 (Control), A146866

313 P3d 351

Peter Gartlan, Chief Defender, and Ingrid A. MacFarlane, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Inge D. Wells, Senior Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Haselton, Chief Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Defendant, who was convicted of one count of burglary in the first degree, ORS 164.225, and multiple counts of first- and second-degree theft, ORS 164.055; ORS 164.045, appeals, assigning error to the imposition of an upward durational departure sentence on the first-degree burglary conviction. He contends that the trial court erred in predicating that departure, in part, on the "multiple victims" enhancement factor, OAR 213-008-0002(1)(b)(G) (3/8/96), which, defendant asserts, is inapposite given the circumstances of the burglary. That rule allows an upward durational departure from a presumptive sentence when "[t]he offense involved multiple victims or incidents" but not when the additional sentence is otherwise "captured in a consecutive sentence." We conclude that, in the circumstances of this case, the burglary offense did not "involve[] multiple victims," and, accordingly, we remand for resentencing.[1]

The factual setting that is material to our review of the departure sentence is simple and uncontroverted. In December 2009, defendant unlawfully entered a residence in Lincoln County, which was being used as a vacation rental home, with the intent to commit theft therein. Although 13 people were staying at the rental home for the holiday season, no one was inside at the time of defendant's entry. Once inside, defendant stole various items, including laptop computers and other electronic devices, belonging to seven of the occupants. Following a bench trial, defendant was convicted on one count of first-degree burglary, two counts of first-degree theft, and five counts of second-degree theft, with each of the theft convictions corresponding to a particular theft victim.

The state sought an upward durational departure sentence on the first-degree burglary conviction based on a variety of enhancement factors, including "[p]ersistent involvement[,]" "[m]ultiple victims/incidents[,]" "[o]n Parole/Probation/PPS[,]" and "[d]isregard for laws, inability to be deterred from new crimes[.]" With respect to the "multiple

---

[1] Defendant also raises other challenges that are foreclosed by *State v. Speedis*, 350 Or 424, 256 P3d 1061 (2011), which issued after the filing of his brief. We reject those contentions without further discussion.

victims" factor, the state relied on the number of occupants (seven) whose personal property had been stolen.[2]

Defendant offered two arguments as to why the "offense involved multiple victims" enhancement factor should not apply to the sentence on the burglary charge. First, defendant contended that the individuals were victims only of the thefts, and not of the burglary *qua* burglary:

> "As far as victims go, your Honor, this is one Burglary. * * * That's one crime I mean there's victims underneath there, but the one crime was the Burglary. So to say that he purposely tried to victimize six or seven different people is really an inaccurate statement of the facts. I mean they in fact were victims of the thefts, but not to the point contemplated by enhancement factors. This was one incident * * *."

Second, and subsequently, defendant asserted that enhancement was inapposite because the circumstances of the burglary were unexceptional and defendant, in unlawfully entering the house, did not do so with the contemporaneous intent to commit crimes therein against multiple victims:

> "There are multiple victims only because this kind of a crime tends to have multiple victims under the circumstances. He didn't pick each one and say, 'I'm going to go steal from [a] and then [b] and the rest of them,' he didn't pick them out that way. This was you know a one-time pick it up and go situation. I think that's the spirit of the separate victims and that's not what applies here."

The trial court ultimately imposed an upward departure sentence on the burglary conviction of 48 months' incarceration, doubling the duration of the presumptive sentence, with 36 months' post-prison supervision.[3] The court predicated that departure on the "multiple victims" and "persistent involvement" guideline departure factors, as well as the nonenumerated departure factors asserted by the prose-

---

[2] The prosecutor also alluded to one of the occupants, who had been the victim of a prior violent home invasion, suffering substantial emotional distress in the wake of the incident. However, the state presented no evidence substantiating that representation.

[3] Under OAR 213-008-0003(2) (11/9/99), a "durational departure from a presumptive prison term shall not total more than double the maximum duration of the presumptive prison term."

cution. In doing so, the court did not state that either of the guidelines departure factors would independently support the departure sentence; nor did the court express its reason for rejecting defendant's arguments pertaining to the (in) applicability of the "multiple victims" enhancement factor.[4]

On appeal, defendant essentially reiterates his arguments before the trial court. First, defendant contends that the "multiple victims" enhancement factor is inapposite because, as a categorical matter, a single unlawful entry into jointly occupied space with a generalized intent to commit theft therein can yield only a single conviction—with a single victim. Thus, defendant reasons, to the extent that he stole the property of multiple occupants, those persons were the "victims" not of the burglary but, instead, of the individual thefts.

In support of that broad contention, defendant argues that the victim of the burglary for purposes of the sentencing guidelines is the same as the victim of the crime for purposes of ORS 161.067, a statute that provides guidance on the number of punishable offenses that may arise out of the "same conduct or criminal episode." ORS 161.067(2) provides, in part:

> "When the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims. *However, two or more persons owning joint interests in real or personal property shall be considered a single victim for purposes of determining the number of separately punishable offenses if the property is the subject of one of the following crimes*:
>
> "* * * * *
>
> "(e) *Burglary as defined in ORS 164.215 or 164.225.*"

(Emphases added.)

---

[4] The court also imposed concurrent sentences of lesser duration on two counts of first-degree theft and five counts of second-degree theft.

Defendant did not assert at sentencing, and does not contend on appeal, that imposition of sentence on the individual theft counts either statutorily or constitutionally precluded imposition of a "multiple victims"-based upward departure sentence on his burglary conviction.

In *State v. Glaspey*, 337 Or 558, 100 P3d 730 (2004), the Supreme Court considered who is a victim for purposes of ORS 161.067 in the context of an assault case. The court concluded "that ORS 161.067(2) uses the term 'victims' to describe the category of persons who are victims within the meaning of the specific substantive statute defining the relevant offense." 337 Or at 563. The court further noted that, "[o]rdinarily, when the term 'victim' is used in a statute that defines a criminal offense, it is used in the precise sense of a person who suffers harm that is an element of the offense." *Id.* at 565. It then concluded, based on the use of the term "victim" in the relevant assault statute, ORS 163.160, that the assaulted person is the only "victim" of that crime for purposes of ORS 161.067. *Id.* at 566-67.

In *State v. Sanchez-Alfonso*, 224 Or App 556, 564, 198 P3d 946 (2008), *rev den*, 346 Or 258 (2009), we concluded that the "victim" of a burglary for purposes of ORS 161.067(2) "is the person who possesses *the property interest* violated." (Emphasis added.) In so concluding, we noted that the "victim" is unitary, regardless of the number of owners or residents of the property against whom the burglary is directed. *Id.* at 562-63; *see also State v. Hathaway*, 231 Or App 556, 219 P3d 605 (2009) (where the defendant unlawfully entered a home owned by husband and wife, trial court erred in failing to merge two counts of first-degree burglary into one conviction). As we understand defendant's argument here, it is that the occupants' status as "victims" *of the burglary* pertains solely to their "property interest" (as lessors of the rental property) and that, consistently with ORS 161.067(2), the "victim" under OAR 213-008-0002(1)(b)(G) is unitary, not multiple.

Second, and alternatively, defendant contends that upward departure sentences are to be imposed only in "exceptional circumstances" overcoming the presumed adequacy of the guidelines presumptive sentence. *State v. Wilson*, 111 Or App 147, 150, 826 P2d 1010 (1992); *see also* ORS 137.671 (authorizing criminal sentence outside of the presumptive sentence only if a court finds that "there are substantial and compelling reasons justifying a deviation from the presumptive sentence"); OAR 213-008-0003(1) (allowing durational departure from presumptive sentence

after consideration of the purposes and principles of the guidelines, including a deviation "for substantial and compelling reasons" under OAR 213-002-0001(2) (3/8/96)). Defendant reasons that there is nothing "exceptional" about a burglary of a residence with multiple occupants for purposes of showing "substantial and compelling reasons"—or, at least, the state has failed, on this record, to establish such exceptionality. Accordingly, defendant asserts, "[R]elying on 'multiple victims' as a departure factor in the burglary context does not punish an unusual or truly unique burglary in the absence of evidence that the typical burglary is committed in a dwelling wherein a single property interest lies."

The state, for its part, contends that the operative construct of "victim" for guidelines enhancement purposes is the omnibus definition of "victim" set out in ORS 131.007:

"As used in *** ORS chapters 136, 137 and 144, except as otherwise specifically provided or unless the context requires otherwise, 'victim' *means the person or persons who have suffered financial, social, psychological or physical harm as a result of a crime ***.*"

(Emphasis added.) The state reasons that, because the authority for imposition of departure sentences is conferred under ORS chapter 137, *see* ORS 137.671, that definition controls in this context. The state asserts that the theft victims here "suffered financial harm resulting from" the burglary, so that the burglary "offense involved multiple victims" under OAR 213-008-0002(1)(b)(G).

Thus, the core issue in this appeal is the meaning of the term "offense involved multiple victims" as used in OAR 213-008-0002(1)(b)(G), and, in particular, who is a "victim" for purposes of the sentencing guidelines. OAR 213-008-0002(1)(b)(G) provides that "the following nonexclusive list of mitigating and aggravating factors may be considered in determining whether substantial and compelling reasons for a departure exist:"

"(b)  Aggravating factors:

"*****

"(G)   The offense involved multiple victims or incidents. This factor may not be cited when it is captured in a consecutive sentence."

The sentencing guidelines do not include a definition of "victim." We discern the meaning of "offense involved multiple victims" by examining the text of the rule, the context of the other portions of the rule and related laws, and the rule's legislative history, including its statutory authorization and the rule adoption record. *State v. Gaines*, 346 Or 160, 170-72, 206 P3d 1042 (2009) (stating those principles of statutory construction); *Higgins v. MVD*, 139 Or App 314, 318, 911 P2d 950 (1996) ("The principles of statutory construction apply equally to administrative rules.").

We begin by rejecting both the state's and defendant's arguments that the meaning of "victim" under the guidelines is supplied, respectively, by ORS 131.007 or ORS 161.067. Neither statute defines "victim" for purposes of anything related to the sentencing guidelines, or specifically for the purpose of calculating the appropriate punishment for a single crime. Each of those statutes was enacted separately from the statutes and rules that promulgate the sentencing guidelines. Neither statute, then, is sufficiently related to or *in pari materia* with the sentencing guidelines so as to suggest a common meaning of the term "victim."

The definition of "victim" at ORS 131.007 was part of the "Crime Victims' Bill of Rights," an initiated law adopted by the voters in 1986. Or Laws 1987, ch 2, § 17. The parts of the 1986 Crime Victims' Bill of Rights that used the term "victim" were, for the most part, statutes providing for participatory rights of victims in criminal trials, sentencing, and parole proceedings. *See, e.g.*, Or Laws 1987, ch 2, §§ 4, 5, 10, now codified at ORS 136.145 (court required to "take the victim into consideration" when setting trial date), ORS 40.385(4) (court authority to exclude witnesses in a criminal trial does not authorize exclusion of "[t]he victim in a criminal case"), ORS 137.013 (right of the victim to appear personally at the time of sentencing); *see also* Or Laws 1987, ch 2, § 14 (amending ORS 144.120 (1987) and providing for notification of the victim before conducting a parole hearing).

To those ends, the measure defined "victim" broadly, providing that,

"[a]s used in ORS 40.385 and in ORS Chapters 136, 137 and 144, except as otherwise specifically provided or unless

the context requires otherwise, 'victim' means the person or persons who have suffered financial, social, psychological or physical harm as a result of a crime and includes, in the case of a homicide, a member of the immediate family of the decedent and, in the case of a minor victim, the legal guardian of the minor. In no event shall the criminal defendant be considered a victim."

Or Laws 1987, ch 2, § 17.

The voters' purpose in adopting the 1986 initiative measure was to maximize the participatory rights of those affected by criminal conduct in related criminal trial, sentencing, and parole proceedings. Section 2 of the measure states that the "purpose of this ballot measure is to declare * * * that victims' rights shall be protected at each stage of the criminal justice system." Or Laws 1987, ch 2, § 2. A broad meaning of "victim" is consistent with that purpose.[5] The durational departure sentencing guidelines are directed, however, to a different end—to define what types of criminal conduct toward victims provide substantial and compelling reasons to depart from the presumptive sentence for a given crime. The meaning of "victim" for purposes of victims' participatory rights is not related to, and provides no relevant context for, the meaning of "victim" for criminal sentencing purposes.

Similarly, the meaning of "victim" in ORS 161.067—a person who suffers harm that is an element of the offense—does not provide helpful guidance regarding the meaning of "victim" in the sentencing guidelines. The statute and the

---

[5] Other parts of the measure, pertaining to the degree of punishment meted out to a criminal defendant, do not use that broad meaning of "victim" in their operation. Section 11 of the measure modified ORS 137.101, relating to compensatory fines payable to "the person injured by the act constituting the crime [who] has a remedy by civil action[.]" That person—a direct victim—is referenced as "the injured victim" or "victim" in other parts of ORS 137.101 that were not amended by the victims' rights measure. Section 11, then, uses "victim" to mean the *direct* victim of a crime. Section 12 of the measure enacted ORS 137.123, a statute that regulates the imposition of concurrent and consecutive sentences in criminal proceedings, and refers to "the victim" as the person who is harmed by the "criminal offense for which a consecutive sentence is contemplated" as opposed to a "different victim" who may be indirectly harmed by that offense. Section 13 of the measure enacted ORS 161.067, the antimerger statute, discussed above, that uses a particular and narrow definition of "victim" in its application.

rules pertain to different subjects (the number of criminal convictions from a single criminal episode/the degree or type of punishment for a single conviction of an offense) and were promulgated at different times by different entities. ORS 161.067 was part of the 1986 Crime Victims' Bill of Rights that was adopted by popular vote; the sentencing guidelines were adopted by an administrative agency and then ratified by the legislative assembly in 1989. *See* Or Laws 1987, ch 619; Or Laws 1989, ch 790, § 101.

Moreover, the meaning of "victim" under ORS 161.067 is too narrow to supply appropriate guidance for the meaning of "victim" in OAR 213-008-0002(1)(b)(G). That narrow meaning would render OAR 213-008-0002(1)(b)(G) inapplicable to entire categories of offenses (*e.g.*, certain property crimes) in which the defendant's conduct, although subject to only a single conviction, has, in fact, resulted in injury to multiple persons. *Accord State v. Luers*, 211 Or App 34, 64-67, 153 P3d 688, *adh'd to as modified on recons*, 213 Or App 389, 160 P3d 1013 (2007) ("victim" for purposes of ORS 161.067(2), as applied to first-degree arson, ORS 164.325, is the owner of the damaged property and not other persons who were recklessly endangered by the defendant's conduct). Conversely, if defendant were correct, a "multiple victims" sentencing enhancement would be available *only* in those circumstances in which a defendant's conduct would necessarily also permit the imposition of multiple convictions (each pertaining to a different victim), with the concomitant potential for imposition of consecutive sentences. That is, if defendant were correct, the enhancement factor would be applicable only in those circumstances in which a defendant's sentence could already be augmented and "enhanced" through other means—but would otherwise be inapposite. As a matter of rational sentencing policy, that does not scan. We are left with the conclusion, then, that the meaning of "victim" under the sentencing guidelines is broader than the meaning of "victim" for purposes of ORS 161.067, but narrower than the meaning of "victim" under ORS 131.007 for purposes of victims' participatory rights.

We turn, then, to the construction of the "offense involved multiple victims" based upon the text, relevant context, and legislative history of the rule. It is plain that an "offense," as used in OAR 213-008-0002(1)(b)(G), means the

crime of conviction for which a sentence is to be imposed. The ordinary meaning of "victim" is "someone put to death, tortured, or mulcted by another : a person subjected to oppression, deprivation, or suffering * * * someone tricked, duped, or subjected to hardship : someone badly used or taken advantage of[.]" *Webster's Third New Int'l Dictionary* 2550 (unabridged ed 2002) (boldface in original). In that sense, a "victim" is someone who is subjected to harm "by another," and not someone who is harmed by other causes.

In order to implicate the "multiple victims" enhancement factor, however, the offense must "involve[]" more than one victim. The plain meaning of "involve" is as follows:

"**2 a :** to draw in as a participant : ENGAGE, EMPLOY * * * **b :** to oblige to become associated (as in an unpleasant situation) * * * **[5] b :** to relate closely : CONNECT, LINK * * * **6 a :** to have within or as part of itself : CONTAIN, INCLUDE * * * **c :** to have an effect on : concern directly * * *."

*Webster's* at 1191 (boldface and capitalization in original). An offense, then, "involves" a victim, in a literal sense, when the statutory definition of the crime makes the victim's status an element of the crime ("to have within or as part of itself") or, in a practical sense, when that status is directly affected by the commission of the crime ("relate closely" or "concern directly"). The text of OAR 213-008-0002(1)(b)(G) suggests that the term "victim" in that provision means someone who suffers a direct and immediate injury because of the commission of the offense, including those injuries that are an element of the offense.

That understanding is supported by the rule's context. The context of the rule includes, "among other things, other provisions of the statute of which the disputed provision is a part." *Hale v. Klemp*, 220 Or App 27, 32, 184 P3d 1185 (2008). As originally enacted, *see* Or Laws 1989, ch 790, §§ 87, 101, the departure factors sentencing guideline was codified at OAR 253-08-002; that guideline was recodified in 1996 at OAR 213-008-0002.[6]

---

[6] OAR 253-08-002 (9/1/89) provided that:

"(1) Subject to the provisions of sections (2) and (3) of this rule, the following nonexclusive list of mitigating and aggravating factors may be considered

The text of the original departure factor guidelines supports a reading of the term "offense involved multiple victims" to mean the direct victims of the offense and not

in determining whether substantial and compelling reasons for a departure exist:

"(a) Mitigating factors:

"(A) The victim was an aggressor or participant in the criminal conduct associated with the crime of conviction.

"(B) The defendant acted under duress or compulsion (not sufficient as a complete defense).

"(C) The defendant's mental capacity was diminished (excluding diminished capacity due to voluntary drug or alcohol abuse).

"(D) The offense was principally accomplished by another and the defendant exhibited extreme caution or concern for the victim.

"(E) The offender played a minor or passive role in the crime.

"(F) The offender cooperated with the state with respect to the current crime of conviction or any other criminal conduct by the offender or other person. The offender's refusal to cooperate with the state shall not be considered an aggravating factor.

"(G) The degree of harm or loss attributed to the current crime of conviction was significantly less than typical for such an offense.

"(H) The offender's criminal history indicates that the offender lived conviction-free within the community for a significant period of time preceding his or her current crime of conviction.

"(b) Aggravating factors:

"(A) Deliberate cruelty to victim.

"(B) The offender knew or had reason to know of the victim's particular vulnerability, such as the extreme youth, age, disability or ill health of victim, which increased the harm or threat of harm caused by the criminal conduct.

"(C) Threat of or actual violence toward a witness or victim.

"(D) Persistent involvement in similar offenses or repetitive assaults. This factor may be cited when consecutive sentences are imposed only if the persistent involvement in similar offenses or repetitive assaults is unrelated to the current offense.

"(E) Use of a weapon in the commission of the offense.

"(F) The offense involved a violation of public trust or professional responsibility.

"(G) The offense involved multiple victims or incidents. This factor may not be cited when it is captured in a consecutive sentence.

"(H) The crime was part of an organized criminal operation.

"(I) The offense resulted in a permanent injury to the victim.

"(J) The degree of harm or loss attributed to the current crime of conviction was significantly greater than typical for such an offense.

"(K) The offense was motivated entirely or in part by the race, color, religion, ethnicity, national origin or sexual orientation of the victim."

indirect and secondary victims of that offense or victims of offenses apart from the one for which a sentence is being imposed. First, the term "offense involved" in aggravating factors (b)(F) to (G) refers to the precise circumstances of the crime of conviction. When a more expanded group of facts is intended, the departure factor expressly states as much. *See* mitigation factor [OAR 253-08-002(1)](a)(A) (the "victim was an aggressor or participant in the *criminal conduct associated with the crime of conviction*" (emphasis added)); mitigation factor (a)(G) and aggravating factor (b)(J) (the "degree of harm or loss *attributed to the current crime of conviction*" is significantly less or greater "than typical for such an offense" (emphasis added)); aggravating factor (b)(D) ("[p]ersistent involvement in *similar offenses* or repetitive assaults" (emphasis added)); aggravating factor (b)(B) (offender knew of victim vulnerability that "increased *the harm or threat of harm caused by the criminal conduct*" (emphasis added)). Put another way, had the drafters of the sentencing guidelines intended to include victims of other related crimes (in addition to direct victims of the crime of conviction) in the "multiple victims" factor, they would have phrased the guideline as "multiple victims of the criminal conduct associated with the crime of conviction" or "multiple victims who are harmed or threatened with harm caused by the criminal conduct," rather than "[t]he offense involved multiple victims."

Second, most of the departure factors are tied to a defendant's conduct as part of the commission of the crime or to circumstances that existed prior to or at the time of the crime, and it is reasonable to construe aggravating factor (b)(G) to the same effect.[7] We recognized that context in construing the meaning of aggravating factor (b)(J) in *State v. Allred*, 165 Or App 226, 995 P2d 1210 (2000). In *Allred*, the defendant was convicted of hindering prosecution by taking a family friend—a known fugitive and aggravated murder

---

[7] A few of the enumerated factors are explicitly tied to circumstances other than a defendant's conduct in committing the crime at issue. *See State v. Ceballos*, 162 Or App 477, 481, 986 P2d 680 (1999), *rev den*, 330 Or 252 (2000) (aggravating factor (b)(D) ("[p]ersistent involvement in similar offenses * * * unrelated to the current offense") can include "similar offenses committed after the current offense for which sentence is being imposed").

suspect—to another city, and placing the fugitive on a bus bound for California. The defendant was sentenced to an upward durational departure under aggravating factor (b)(J) ("[t]he degree of harm or loss attributed to the current crime of conviction was significantly greater than typical for such an offense"). 165 Or App at 228-29. The sentencing court concluded that a departure was warranted under that factor because the defendant "posed a graver risk to public safety than typically might be the case because he was an aggravated murder suspect." *Id.* at 229. The court reasoned that, by giving the suspect "a second breath to go down and potentially commit a similar crime or the same type of crime," the defendant "put the public at great risk and [he] simply didn't need to do it." *Id.* at 230.

In construing the meaning of the factor, we noted that

"[t]he text is phrased in the past tense. The guideline refers to a degree of harm or loss 'attributed' to the current crime of conviction. It further refers to whether the harm or loss 'was' significantly greater than typical for the crime. In that respect, the terms have a distinctly retrospective and completed-act focus. The same is true of the provision's surrounding context. The other aggravating factors contained in the same rule are all directed to actual and completed harms that are a consequence of the crime committed, not to risk of harm in the form of prospective and theoretical future crimes.[2] It may be that the legislature, had it considered the possibility, would have chosen to encompass risk of future harms in the equation. But, unlike other statutes and guidelines where the legislature expressly has referred to future or potential dangerousness, it plainly did not do so here.

_____

"[2] Other aggravating factors in the same administrative rule include that the crime involved deliberate cruelty to the victim; knowledge of a victim's particular vulnerability; use of a weapon; a violation of public trust or responsibility; *multiple victims*; permanent injury to the victim; and a discriminatory animus in targeting a particular victim. *See generally* OAR 213-008-0002(1)(b)."

*Id.* at 230-31, 231 n 2 (footnote omitted; emphasis added).

We concluded that the sentencing court erred in departing on the basis of speculative and future potential harm—harm that was "theoretical only, rather than a harm or loss that actually occurred because of [the] defendant's crime"—and ultimately harm that was "the wrong harm altogether—that is, the court did not assess whether [the] defendant's crime interfered with public justice in a way that was significantly greater than is typical for a hindering offense." *Id.* at 233. Rather, the possibility of future harm was "at most a potential collateral consequence of the crime's commission. It [was] not a harm that inheres in the crime's commission or that forms the rationale for criminalizing the conduct." *Id.*; *see also State v. Wolff*, 174 Or App 367, 370-71, 27 P3d 145 (2001) (improper to depart on sentence for hindering prosecution of crime because of permanent injury to the victim of underlying crime where the defendant's hindering conduct "did not result in any permanent injury to the victim" of that underlying crime; instead, the harm was created by the criminal conduct of others); *State v. Ambrose*, 117 Or App 298, 300-01, 844 P2d 227 (1992) (improper to depart on degree of harm factor where the harm or loss did not have "a direct link to [the] defendant's acts"). *But see State v. Watkins*, 146 Or App 338, 343, 932 P2d 107, *rev den*, 325 Or 438 (1997) (aggravating factor (b)(J) "does not condition an upward departure on a finding that a defendant was implicated in or responsible for the greater-than-typical harm that occurred").

Applying the logic of *Allred* here, aggravating factor (b)(G) ("offense *involved* multiple victims" (emphasis added)) is "phrased in the past tense" and has a "distinctly retrospective and completed-act focus." The "same is true of the provision's surrounding context." Thus, the "multiple victims" of the "offense" must be persons who are directly injured by the "harm that inheres in the crime's commission or that forms the rationale for criminalizing the conduct." *Allred*, 165 Or App at 230, 233.

That meaning of victim—as including a person who suffered direct injury from the commission of the crime—is supported by the legislative history of aggravating factor (b)(G). That particular factor was drawn from the guidelines

previously applied by the Board of Parole in setting a release date for a prisoner incarcerated under the indeterminate sentencing system in place before 1989. Oregon Criminal Justice Council, *Oregon Sentencing Guidelines Implementation Manual* 131 (1989). That guideline allowed a lengthier sentence when "[t]here is a single conviction for a crime involving multiple victims." *Harris v. Board of Parole*, 47 Or App 289, 300, 614 P2d 602 (1980), *rev den*, 291 Or 504 (1981) (quoting guideline). Thus, the multiple victims come directly from the crime of conviction, not from subsequent criminal conduct (even if facilitated by the crime of conviction).

Finally, we note that the "multiple victims" departure factor also has its roots in the contemporaneous Washington departure factor that the "current offense involved multiple victims or multiple incidents per victim[.]" RCW 9.94A.535(3)(d)(i). Thus, Washington authority may provide guidance in this case. *See Wilson*, 111 Or App at 151 n 5 ("Washington * * * guidelines sentencing appellate decisions function as guidance in interpreting the Oregon provision."). In *State v. Davis*, 53 Wash App 306, 766 P2d 1120, *rev den*, 112 Wash 2d 1015 (1989), the Washington Court of Appeals construed "victim" in relation to that guideline to mean "one whose injuries are proximately caused by conduct forming the basis of the crime charged." *Id.* at 310, 766 P2d at 1123. In *Davis*, the defendant was convicted of vehicular homicide after his vehicle collided with another vehicle, killing one passenger and injuring three other passengers in the other vehicle. *Id.* at 307-08, 766 P2d at 1122. The defendant argued that there was only one victim of the crime, because an element of vehicular homicide was that the offense result in "the death of any person" and only one person died. *Id.* at 310, 766 P2d at 1123. The court rejected that element-of-the-offense victim definition as too narrow, reasoning that,

"[u]nder appellant's reasoning, there would never be multiple victims because if one qualified as a victim, then the injury would, by that definition, be the basis for a charge. As such, the conduct would already factor into the defendant's offender score as a current offense and could not be used as an aggravating factor. This court avoids construing statutes in a manner that renders provisions superfluous

or meaningless. Accordingly, the proper construction of RCW 9.94A.030(25) is that a 'victim' is one whose injuries are proximately caused by conduct forming the basis of the crime charged. In this case, the three passengers of the Harris automobile were proximately injured by appellant's collision with them while he was intoxicated. That collision and the resulting death of Laurie Myer formed the basis of appellant's conviction for vehicular homicide. Consequently, the three other injured persons were 'victims,' injured 'as a direct result of the crime charged.' RCW 9.94A.030(25)."

*Id.* at 310-11, 766 P2d at 1123-24 (footnote and some internal citations omitted). Thus, persuasive authority supports our conclusion that the term "victim" means a person who is directly, immediately, and exclusively injured by the commission of the crime.

In sum, in view of the text, context, and legislative history of aggravating factor (b)(G), for purposes of that factor, a "victim" is a person who is directly, immediately, and exclusively injured by the commission of the crime—not persons injured only by subsequent, additional criminal conduct. Here, the theft victims were injured only when defendant took possession of and appropriated their property, not when defendant entered the residence and thereby committed the burglary. Defendant's appropriations occurred after, and were distinct from, the commission of the burglary. Thus, the theft victims were not directly, immediately, and exclusively injured by the burglary. The trial court erred in applying OAR 213-008-0002(1)(b)(G) to include the theft victims. Accordingly, the case must be remanded for resentencing. *See Wilson*, 111 Or App at 152.

Remanded for resentencing; otherwise affirmed.