Argued and submitted July 29, 2013, affirmed March 5, 2014

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

ROBERT FERGUSON,
aka Robert Andrew Ferguson,
*Defendant-Respondent.*

Multnomah County Circuit Court
110431339; A149460

323 P3d 496

Karla H. Ferrall, Assistant Attorney General, argued the cause for appellant. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Daniel C. Bennett, Deputy Public Defender, argued the cause for respondent. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Defendant damaged a truck that belonged to his former employer, and the state charged him with first-degree criminal mischief, ORS 164.365, and harassment, ORS 166.065. After the employer acknowledged that he had received satisfaction for his injuries, defendant moved to dismiss the charges pursuant to ORS 135.703 to 135.709, which allow dismissal of criminal charges after civil compromise with "the person injured by the act constituting the crime" in certain circumstances. The trial court granted defendant's motion and entered a judgment of dismissal. The state appeals, contending that the trial court erred in dismissing the charges because the employer's insurer was a "person injured" and it did not acknowledge satisfaction for injuries it suffered by defendant's criminal actions. Because we conclude that the civil compromise statutes do not require that an insurer acknowledge satisfaction of its injuries before a trial court may allow a civil compromise, we affirm.

The facts are undisputed, except as noted. Defendant worked for a business owned by Dave Heffner. After defendant's employment ended, he "took a tire iron to" Heffner's truck. The state charged defendant with criminal mischief and harassment by an information alleging that defendant had damaged Heffner's property. Repairs to the truck cost $7,821, for which Northland Insurance (Northland) paid $6,821—the cost of the repairs minus a $1,000 deductible.[1] Heffner signed a civil compromise agreement accepting $2,500 from defendant as satisfaction of the injury incurred. Northland was not a party to that or any other civil compromise agreement with defendant. Defendant then moved to dismiss the charges under ORS 135.703 to 135.709. The trial court granted the motion and entered a judgment of dismissal. As noted, the state appeals.

---

[1] On appeal, defendant contends that the state presented no evidence in support of this fact. Because we conclude, as a matter of law, that an insurer who makes payments to an injured person is not required to participate in a civil compromise, we do not address whether the state would be required, in these circumstances, to present evidence or make an offer of proof to support the asserted payment.

ORS 135.703(1) provides:

"When a defendant is charged with a crime punishable as a misdemeanor for which the person injured by the act constituting the crime has a remedy by civil action, the crime may be compromised, as provided in ORS 135.705[.]"

ORS 135.705(1)(a), in turn, provides:

"If the person injured acknowledges in writing, at any time before trial on an accusatory instrument for the crime, that the person has received satisfaction for the injury, the court may, in its discretion, on payment of the costs and expenses incurred, enter a judgment dismissing the accusatory instrument."

Thus, the civil compromise statutes allow courts to dismiss criminal charges if four conditions are met: (1) the defendant is charged with a crime punishable as a misdemeanor, (2) the person injured by the act constituting the crime has a remedy by civil action, (3) the person injured acknowledges in writing before trial that the person has received satisfaction for the injury, and (4) the defendant pays costs and expenses incurred. *See State v. Dumond*, 18 Or App 569, 574, 526 P2d 459, *rev'd on other grounds*, 270 Or 854, 530 P2d 32 (1974) (setting out the same four conditions).

The parties dispute the third condition. Defendant contends that only a direct victim of a crime is a "person injured" for purposes of the civil compromise statutes, and so in this case only Heffner was required to participate in the civil compromise. The state, on the other hand, contends that the legislature intended that "person[s] injured" include those who suffered damages indirectly as a result of a crime, and so Northland also had to participate in the civil compromise.

To determine whether an insurer who has paid a victim for damage inflicted by a criminal act is a "person injured" for purposes of the civil compromise statutes, we must construe ORS 135.703 and ORS 135.705. When construing statutes, we examine their text in context, along with any relevant legislative history, to discern the legislature's intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

The legislature has not defined "person injured" in the civil compromise statutes, nor has it chosen to use the arguably similar term "victim."[2] The civil compromise statutes have existed, in essentially similar form, since the time of the Deady Code. General Laws of Oregon, Crim Code, ch XXX, §§ 315-318, pp 495-96 (Deady 1845-1864). The Deady Code referred to "the person injured by the act constituting the crime" in the precursor to ORS 135.703 and to "the party injured" in the precursor to ORS 135.705. *Id.* at §§ 315, 316, pp 495-96. Accordingly, we attempt to discern what the legislature would have understood "person injured" or "party injured" to mean in 1864.

The Deady Code defined neither "person injured" nor "party injured," but defined "person" as follows:

"The word 'person,' includes corporations as well as natural persons; and where such word is used to designate the party whose property may be the subject of a crime, it includes this state, any other state, government or country, which may lawfully own any property in this state, and all municipal or public corporations, and private corporations, as well as individuals."

General Laws of Oregon, Crim Code, ch LIII, § 724, p 577 (Deady 1845-1864). The Deady Code also provided that "[t]he singular number includes the plural, and the plural the singular." *Id.* at § 725, p 577. Accordingly, 1864 statutory references to a "person" may include one or more individuals or corporations. Current statutory provisions are to the same effect. ORS 174.100(5) ("person" includes individuals, corporations, associations, firms, partnerships, limited liability companies, and joint stock companies); ORS 174.127(1) (the singular number may include the plural).

The Deady Code did not use the term "victim," but it used the terms "person injured" or "party injured" in both civil and criminal contexts:

"If a guardian, tenant in severalty or in common, for life or for years, of real property, commit waste thereon, any

---

[2] "Victim" is defined in several places in the Oregon Revised Statutes, but none of those definitions applies to or cross-references the civil compromise statutes. *E.g.*, ORS 131.007 (defining "victim" for purposes of specified criminal procedure provisions); ORS 137.103 (defining "victim" for purposes of compensatory fines, restitution, and payment or nonpayment of fines, restitution, and costs).

person injured thereby, may maintain an action at law for damages therefor, against such guardian or tenant[.]"

General Laws of Oregon, Civ Code, ch IV, title II, § 334, pp 231-32 (Deady 1845-1864).

"When a public officer, by official misconduct or neglect of duty, shall forfeit his official undertaking or other security, or render his sureties therein liable upon such undertaking or other security, any person injured by such misconduct or neglect, who is by law entitled to the benefit of the security, may maintain an action at law thereon in his own name, against the officer and his sureties, to recover the amount by which he may by reason thereof be entitled."

*Id.* at § 338, p 233.

"A dissolution of the marriage contract may be declared at the suit or the claim of the injured party for [enumerated causes."

*Id.* at ch V, title VII, § 491, p 270.

"When a crime involves the commission of, or an attempt to commit a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured or intended to be injured, is not material."

General Laws of Oregon, Crim Code, ch VIII, § 76, p 454 (Deady 1845-1864).

"A challenge for implied bias may be taken for any of the following causes, and for no other:

"1.   Consanguinity or affinity, within the fourth degree, to the person alleged to be injured by the crime charged in the indictment[.]"

*Id.* at ch XV, § 153, p 466.

"Resistance to the commission of crime may be lawfully made by the party about to be injured, or by any other person, in his aid or defence:

"1.   To prevent a crime against his person;

"2.   To prevent an illegal attempt, by force, to take or injure property in his possession."

*Id.* at ch XXXVIII, § 412, p 512.

"In a justice's court, a criminal action is commenced by the filing of the complaint therein, * * * and no judgment of conviction or acquittal can be given in a criminal action in justice's court, unless the *person injured* appear, or be subpoenaed to attend the trial as a witness."

General Laws of Oregon, Justice Code, ch X, § 79, p 598 (Deady 1845-1864).

"[I]f the owner or occupier of any mill, their representative, agent or miller, shall take a greater proportionate quantity of toll than is hereinbefore authorized, and be duly convicted thereof before any court * * * shall * * * be liable at the suit of the *person injured* for damages."

General Laws of Oregon, General Laws, ch LV, § 3, p 924 (Deady 1845-1864).

"If any person shall willfully violate the provisions of this title [of travel on public highways], he shall forfeit and pay the sum of five dollars for every such violation, to the party injured, to be recovered by a civil action, and such further damage in the same action as such party may directly sustain by reason of such violation."

*Id.* at ch XLVII, title IV, § 69, p 876 (Deady 1845-1864).

Accordingly, it appears that, in 1864, "person injured" or "party injured" could include one or more natural persons or corporations injured by either a civil wrong or a criminal act. And, although the intent of later legislatures does not directly bear on the meaning of a statute enacted in 1864, it appears that the Oregon Revised Statutes continue to use the term "person injured" in both civil and criminal contexts. *Compare* ORS 112.825 (person who destroys will "shall be liable to any person injured by such violation for any damages sustained thereby"), *with* ORS 135.725 (when accusatory instrument is otherwise sufficient, "an erroneous allegation as to the person injured or intended to be injured is not material").

On a textual level, defendant points to the phrase "by the act constituting the crime," which modifies "person injured" in ORS 135.703. We understand defendant to contend that, by referring to a "person injured by the act constituting the crime" (and not some other phrase, like "person

injured by the crime" or "person injured as a consequence of the crime"), the legislature intended to require the participation in a civil compromise of only those directly injured by criminal acts, not those injured as a result of the consequences of those acts. Defendant's argument has the virtue of assigning a discernible meaning to all the words of the statute, in particular the words "by the act constituting," which would otherwise be unnecessary. *See* ORS 174.010 (where a statute contains "several provisions or particulars," we attempt to construe it to "give effect to all"); *State v. Landahl*, 254 Or App 46, 51, 292 P3d 646 (2012), *rev den*, 353 Or 788 (2013) (noting that courts generally assume that the legislature did not intend any parts of its enactments to be meaningless surplusage). However, that point does not convince us that the state's proposed broader construction is entirely implausible.

We turn to prior constructions of the civil compromise statutes. *See, e.g., State v. Bassett*, 243 Or App 289, 294, 259 P3d 953 (2011) (noting that prior judicial construction of a statute is pertinent to textual analysis). Although defendant suggests that the issue in this case is resolved by *State v. Dugger*, 73 Or App 109, 698 P2d 491 (1985), we disagree. In that case, the defendant exposed his genitals while in a department store. He entered into a civil compromise with the department store, and the trial court dismissed the charge. *Id.* at 111. We concluded that public indecency is not an offense subject to civil compromise, because the "civilly redressable injury" (*i.e.*, the injury suffered by the department store in which the defendant exposed himself) was not the sole consequence of the act: "other members of the public who observed or could have observed his act were as entitled as the management of the store not to be subjected to it." *Id.* at 111, 113.

In reaching that conclusion, we observed that ORS 135.703 refers not to "a person injured" but to "the person injured" and that that phrase indicates that there "*must* be a *discrete* victim or victims" in order for a crime to be subject to civil compromise. *Id.* at 112 (emphasis in original). Defendant in this case contends that we should read *Dugger* to hold that the legislature intended that the civil compromise statutes apply only to those suffering direct injury for

the act constituting the crime, not to those injured more remotely. Although, in *Dugger*, we did point to the use of the definite article in the phrase "*the* person injured by the act," by that we were emphasizing that only those crimes that necessarily injure only a discrete one or more persons—not those that also, and primarily, injure the public at large—are subject to civil compromise. *Dugger* does not aid defendant here.

To inform our construction of the civil compromise statutes, we also look at other statutory provisions—including the restitution statutes and the anti-merger statutes—and case law construing those provisions. We consider those other statues *in pari materia*, not strictly speaking as context—as they were enacted after the civil compromise statutes—but to the extent that they demonstrate consistency (or inconsistency) in word usage over time or as indirect evidence of what the enacting legislature most likely intended. *See Halperin v. Pitts*, 352 Or 482, 490-91, 287 P3d 1069 (2012) (approving that use of later-enacted statutes in statutory construction analysis; collecting cases).

The state points to the restitution statutes, ORS 137.103 to 137.109, and several cases construing them: *State v. Ceballos*, 235 Or App 208, 230 P3d 954, *rev den*, 348 Or 669 (2010), and *State v. Divers*, 51 Or App 351, 625 P2d 681 (1981). Defendant responds that a "crucial" distinction that exists between the two statutory schemes—the civil compromise statutes use "person injured," while the restitution statutes use "victim"—makes the comparison inapt. Moreover, defendant continues, an express definition of "victim" in the restitution statutes includes insurance companies, while there is no direct mention of insurers in the civil compromise statutes. For his part, however, defendant points to another statute using the term "victim"—ORS 161.067, the "anti-merger" statute—and a case construing that statute, *State v. Glaspey*, 337 Or 558, 100 P3d 730 (2004). Under those authorities, according to defendant, we should conclude that "person injured" in the civil compromise statutes refers to the victim of the underlying crime.

The development of statutes related to restitution, and case law construing those statutes, is helpful to the

analysis. In 1975, ORS 137.540(10) (1973)[3] authorized a sentencing court to require, as a condition of probation, that the probationer

> "[m]ake reparation or restitution to the aggrieved party for the damage or loss caused by [the] offense, in an amount to be determined by the court."

The meaning of "aggrieved party" in that statute was at issue in *State v. Stalheim*, 23 Or App 371, 542 P2d 913 (1975), *aff'd*, 275 Or 683, 552 P2d 829 (1976). In that case, the defendant had been convicted of criminally negligent homicide after the car he was driving struck an oncoming vehicle and killed two people. The trial court ordered that the defendant make restitution to the husband and father of the two direct victims. *Id.* at 372-73. The defendant appealed, challenging that condition of his probation.

We observed that the question presented—whether the husband and father of the accident victims was an "aggrieved party" within the meaning of ORS 137.540(10) (1973)—was an issue of first impression. Because federal and New York statutes were similar—both also using the phrase "aggrieved party"—we looked to cases construing those statutes. *Id.* at 375. In particular, we relied on a New York case that had concluded that "'[t]he aggrieved party in a criminal action can only refer to the party whose rights, personal or property, were invaded by the defendant * * *.'" *Id.* at 376 (quoting *People v. Grago*, 24 Misc 2d 739, 304 NYS 2d 774, 777 (Co Ct 1960)). The New York court had held that "aggrieved party" did not include the insurer of a bank that had repaid funds that the defendant had deposited after embezzling them. *Id.* And we also distinguished ORS 137.540(10) (1973) from a Washington statute that allowed restitution to "any person or persons who may have suffered loss or damage by reason of the commission of the crime." *Id.* at 377 (internal quotation marks omitted). The Washington statute, we observed, indicated no "intent to limit the persons to whom restitution or reparation may be ordered as long as they suffered some loss in connection with the crime." *Id.* ORS 137.540(10) (1973), by contrast, "authorizes reparation or restitution to 'the' aggrieved party, focusing on

---

[3] ORS 137.540 has been amended several times since 1973.

the person whose rights the defendant directly invaded." *Id.* Accordingly, we concluded that the trial court had erred in ordering restitution to the husband and father of the direct victims.

On review, the Supreme Court affirmed. *State v. Stalheim*, 275 Or 683, 552 P2d 829 (1976). The court acknowledged that ORS 137.540(1) (1973) was susceptible to a broad interpretation—under which a trial court could allow restitution or reparation to a wide variety of persons in any reasonable amount consistent with facilitating rehabilitation—or a narrow one—under which the persons entitled to receive benefits under it and the character of the benefits would be more limited. *Stalheim*, 275 Or at 686. The court reviewed the problems inherent in a broad interpretation, including the hazard of requiring trial judges to make determinations usually reserved to civil juries without the benefit of pleading or witnesses, the danger to defendants from introducing civil damages issues into criminal trials, and the pressure defendants might feel to accept a measure of damages that was exorbitant or speculative, or imposed after only a summary procedure, instead of going to prison. *Id.* at 686-87. For those reasons, the court narrowly construed the type of damages that could be the subject of restitution or reparation and, as pertinent here, construed "'aggrieved party' to refer to the direct victim of a crime, and not to other persons who suffer loss because of the victim's death or injury." *Id.* at 688.

Following *Stalheim*, we decided *State v. Getsinger*, 27 Or App 339, 556 P2d 147 (1976). In that case, the defendant had been convicted of unauthorized use of a motor vehicle. The trial court ordered that the defendant make restitution to the insurer of the car for claims it had paid to the owner arising out of the unauthorized use. *Id.* at 341. The defendant appealed, arguing that the restitution order exceeded the trial court's authority. Applying *Stalheim*, we agreed with the defendant:

"[T]he phrase 'direct victim' [in *Stalheim*] suggests limiting the reparation to the one who initially suffers loss. Here the insurer only suffered loss because the owner did; it was the owner who suffered the loss initially; under *Stalheim*,

he alone is the direct victim, or the 'aggrieved party' for purposes of ORS 137.540(10)."

*Getsinger*, 27 Or App at 341-42 (footnote omitted).

Several years later, in *Divers*, we were again presented with the question whether an insurer could receive restitution; however, by that time, the legislature had amended the restitution statutes. In that case, the defendant had pleaded guilty to assault and theft after taking boots from a retail store and striking a store security guard, breaking his nose. The guard was unable to work for several days, the employer paid him lost-time benefits, and the employer's workers' compensation insurer reimbursed the employer. The trial court ordered that the defendant make restitution to the insurer. 51 Or App at 353. The defendant appealed, arguing that the trial court erred in ordering restitution to the insurer.

By that time, the 1977 Legislative Assembly had responded to *Stalheim* by enacting new restitution statutes, ORS 137.103 to 137.109:

"The legislature was particularly concerned with expanding the category of persons who could receive restitution. Five bills addressing the problem of compensating victims of crime were introduced. House Bill 2012, the bill eventually enacted into law, initially contained a section which specifically provided that an insurer could recover from the defendant if it paid a victim's damages. That section was deleted, however, when legislative counsel and others expressed their belief that the bill's broad definition of 'victim' would include insurance companies. There was some concern that a separate section covering insurers would result in a restrictive interpretation of the general definition of 'victim.'"

*Id.* at 354 (citations omitted); *see also State v. Barkley*, 315 Or 420, 434-37, 846 P2d 390, *cert den*, 510 US 837 (1993) (reviewing legislative history regarding 1977 enactment of ORS 137.103 to 137.109 in the context of a case involving a compensatory fine under ORS 137.101). Thus, at the time of *Divers*, ORS 137.106(1) (1977) provided:

"When a person is convicted of criminal activities which have resulted in pecuniary damages, in addition to any

other sentence it may impose, the court may order that the defendant make restitution to the victim."

ORS 137.103(4) (1977) in turn provided that

"'[v]ictim' means any person whom the court determines has suffered pecuniary damages as a result of the defendant's criminal activities[.]"

In light of the clear intention of the legislature to expand the category of those to whom restitution could be ordered, we concluded that an insurer could receive restitution if it could recover the benefits it had paid in a civil action against the criminal defendant. *Divers*, 51 Or App at 355. In *Divers*, we could not ascertain the facts that would have allowed us to determine whether the workers' compensation insurer could have recovered the benefits it had paid to the employer in an action against the defendant, and so we remanded the case to the trial court for further factfinding. *Id.* at 356.

Finally, in *Ceballos*, we considered whether funeral expenses paid by an insurer at the request of a decedent's family were a proper subject of restitution. In that case, the defendant was convicted of criminally negligent homicide for causing the death of the decedent. The decedent had a life insurance policy payable to his brother, Faulkner. Although the insurance policy did not include a benefit for funeral expenses, the insurer—at Faulkner's request—paid the funeral home directly for those expenses and then paid the remainder of the policy benefit to Faulkner. 235 Or App at 210. The trial court declined to order restitution for the funeral expenses, and the state appealed.

By that time, the legislature had again amended the restitution statutes; the 2005 version of those statutes applied to that case. ORS 137.106(1) (2005) provided:

"When a person is convicted of a crime * * * that has resulted in economic damages, the district attorney shall investigate and present to the court, prior to the time of sentencing, evidence of the nature and amount of the damages. If the court finds from the evidence presented that a victim suffered economic damages, in addition to any other sanction it may impose, the court shall:

"(a)   Include in the judgment a requirement that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court[.]"

And, under ORS 137.103(4) (2005), "victim" was defined as follows:

"(a)   The person against whom the defendant committed the criminal offense, if the court determines that the person has suffered economic damages as a result of the offense.

"(b)   Any person not described in paragraph (a) of this subsection whom the court determines has suffered economic damages as a result of the defendant's criminal activities.

"(c)   The Criminal Injuries Compensation Account, if it has expended moneys on behalf of a victim described in paragraph (a) of this subsection.

"(d)   An insurance carrier, if it has expended moneys on behalf of a victim described in paragraph (a) of this subsection."

We concluded that Faulkner was a "victim" under ORS 137.103(4)(b) (2005). We reasoned that he "suffered economic damages * * * as a result of the defendant's criminal activities" when he became subject to necessary funeral charges. *Id.* at 213-14.

We glean the following from the history of the restitution statutes. The restitution scheme was closest in wording to the current civil compromise statutes at the time of *Stalheim,* when it allowed restitution to "the aggrieved party." Both we and the Supreme Court construed "the aggrieved party" to be limited to only direct victims of criminal acts, not to refer to those damaged more remotely by the consequences of those acts. And particularly, in *Getsinger,* we held that the insurer of a motor vehicle that had paid the owner for claims after the defendant had damaged the owner's vehicle was not an "aggrieved party" entitled to restitution. The cases construing "aggrieved party" as limited to direct victims of crimes provide some support for similarly construing "person injured" in the civil compromise

statutes. Moreover, it was only after the legislature acted to expand the universe of those entitled to restitution that we concluded, in *Divers*, that an insurer could receive restitution. The legislature has not chosen similarly to amend the civil compromise statutes or otherwise indicate an intention that a broader range of persons, including insurers, must participate to validate a civil compromise. Accordingly, *Divers* and *Ceballos* do not aid us in resolving the question presented here.

We also find the anti-merger statute, and particularly the Supreme Court's construction of that statute in *Glaspey*, 337 Or 558, to be helpful. The anti-merger statute, ORS 161.067 provides, in part:

"(2) When the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims."

Accordingly, if two or more "victims" are subjected to the same criminal conduct, there are as many punishable offenses as victims, even if the conduct violates only one statutory provision.

In *Glaspey*, the defendant assaulted his wife in the presence of their two children. The defendant was convicted of two counts of fourth-degree assault, under a provision that elevates the class of that offense when the assault is committed in the presence of the victim's minor child, on the theory that each child was a victim of the assault. At sentencing, the defendant argued that the counts must "merge for sentencing purposes." The trial court rejected that argument, entered both convictions, and imposed separate sentences. 337 Or at 560-61.

On review, the Supreme Court concluded that "victim" in ORS 167.067(2) refers to the "victim" in the substantive statutory provision that defines the offense of conviction and not to others who may have suffered the consequences of the acts constituting the offense. *Id.* at 567. The court observed that ordinarily, when the term "victim" is used in a statute that defines a criminal offense, it is used in the precise sense of a person who suffers harm that is an element of

the crime. *Id.* at 565-66. And that ordinary sense of "victim," the court explained, applied in context of the substantive provision that defined fourth-degree assault: "the 'victim' of fourth-degree assault is the person who is directly and physically injured by an assault." *Id.* at 565. Accordingly, defendant's two children, who had witnessed him assaulting their mother, were not "victims" for purposes of the anti-merger statute; there was only one "victim" of the assault—the mother—and hence only one punishable offense.

Similarly, we applied the reasoning of *Glaspey* in *State v. Teixeira*, 259 Or App 184, 313 P3d 351 (2013). In that case, the defendant unlawfully entered a residence with the intent to commit theft and stole items belonging to several of the occupants. The defendant was convicted of one count of burglary and several counts of theft. In sentencing the defendant on the burglary charge, the trial court applied a rule providing for an upward durational departure sentence when the offense "involved multiple victims." *Id.* at 185 (internal quotation marks omitted). The issue on appeal was whether the burglary itself involved only one victim or several victims, such that it was appropriate to apply the rule. Relying on *Glaspey*, we concluded that it was appropriate to read the term "victim" in the pertinent administrative rule to mean "someone who suffers a direct and immediate injury because of the commission of the offense, including those injuries that are an element of the offense." *Teixeira*, 259 Or App at 193. Put another way, we stated that, for purposes of the aggravating factor at issue in *Teixeira*, "a 'victim' is a person who is directly, immediately, and exclusively injured by the commission of a crime—not persons injured only by subsequent, additional criminal conduct." *Id.* at 199. Because the theft victims were not injured by the burglary—but only by the thefts that followed—the upward durational departure should not have been applied to the defendant's burglary conviction.

*Glaspey* and *Teixeira* suggest that it is generally appropriate to resolve who is affected by a particular crime by examining the statute defining that crime. Here too, we think it is appropriate to consult the substantive statutory provision under which defendant was charged in order to determine who should be considered a "person injured"

for purposes of the civil compromise statutes. Under ORS 164.365(1)(a), a "person commits the crime of criminal mischief in the first degree who, with intent to damage property, and having no right to do so nor reasonable ground to believe that the person has such right * * * [d]amages or destroys property *of another*." (Emphasis added.) Thus, the "another" person whose property is damaged or destroyed is the person injured by the crime of criminal mischief. And under ORS 166.065(1)(a), a person "commits the crime of harassment if the person intentionally * * * [h]arasses or annoys *another person*" by various actions. (Emphasis added.) So too there, the "another" person who is harassed or annoyed is the person injured by the crime of harassment. As with the "victim" of an assault, as in *Glaspey*, the "person injured" by criminal mischief and harassment are the precise persons who suffer harm as a result of the acts constituting those crimes. The reasoning of *Glaspey* and *Teixeira* undermines the state's suggested broad meaning of "persons injured" for purposes of the civil compromise statutes.

Considering all those textual and contextual clues together, we conclude that, for purposes of ORS 135.703 and ORS 135.705, the "person injured" who must participate in a valid civil compromise is the person or persons directly injured by the acts criminalized by the statute under which a defendant is charged. Here, the only person directly injured by defendant's acts constituting criminal mischief and harassment was Heffner, and so only he was required to acknowledge satisfaction of his injuries in order for the trial court to dismiss the information in this case. Northland is not a "person injured" under the civil compromise statutes, and so the trial court did not err in dismissing the information without its participation in the civil compromise.

Affirmed.