No. 267 15 April 23, 2015 145

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

MICHAEL PAUL LYKINS,
*Petitioner on Review.*

(CC C100530CR, D101103M;
CA A146498 (Control), A146499;
S061997)

En Banc

On review from the Court of Appeals.*

Argued and submitted September 15, 2014.

Neil F. Byl, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jennifer S. Lloyd, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

BALDWIN, J.

The decision of the Court of Appeals is reversed. The sentence imposed by the circuit court is vacated, and the case is remanded to the circuit court for resentencing.

_____
* Appeal from Washington County Circuit Court, Steven L. Price, Judge. 259 Or App 475, 314 P3d 704 (2013).

**BALDWIN, J.**

In this criminal case, defendant was convicted of the crime of tampering with a witness, ORS 162.285, after he tried to persuade his girlfriend to testify falsely in his impending trial on charges of criminal trespass and criminal negligence. At defendant's sentencing hearing following the tampering conviction, the state asked the trial court to impose an upward departure sentence, based on the fact that defendant's girlfriend was a "vulnerable victim" under the administrative rule governing departure sentences, OAR 213-008-0002(1)(b)(B). Defendant objected on the ground that the state, not the witness, is the victim of the crime of tampering with a witness and, therefore, that the departure factor did not apply. The trial court disagreed with defendant and imposed a 48-month durational departure sentence on the tampering conviction. On appeal, the Court of Appeals affirmed. We allowed review and now reverse the decision of the Court of Appeals and vacate the sentence imposed by the circuit court on defendant's tampering conviction.

Because the jury found defendant guilty of the charged offenses, we state the facts in the light most favorable to the state. *State v. McClure*, 355 Or 704, 705, 335 P3d 1260 (2014). Defendant and his girlfriend, O'Connor, had a tumultuous relationship for years before the incidents leading to this case. Defendant had assaulted O'Connor twice in 2007, was convicted of various crimes arising out of those assaults, and was sentenced to a term of imprisonment. As a condition of his release, defendant was ordered not to have contact with O'Connor. In late 2009, defendant was arrested twice for violating the no-contact order, convicted of post-prison supervision violations, and incarcerated again. Defendant was released from prison in February 2010 and began staying in O'Connor's apartment, in violation of the no-contact order. Soon, however, O'Connor told defendant that she would not permit him to stay with her any longer. When O'Connor and defendant last left O'Connor's apartment together, O'Connor placed defendant's belongings on the porch outside a door to her apartment. Defendant did not have a key, and O'Connor did not intend for defendant to enter the apartment in her absence. When O'Connor returned to her apartment a few days later, a window screen

had been removed, the door was ajar, and defendant was in her apartment. O'Connor called the police, and defendant was arrested and taken to jail.

Defendant called O'Connor three times from jail. In the first call, defendant told O'Connor that he was facing five to seven years in prison for burglary; he pleaded with her to tell the police that his belongings were in the apartment and that he had permission to be there. He asked O'Connor to tell the authorities that she had misreported the crime because she was having "delusions." When O'Connor refused, defendant told O'Connor that she had left the sliding glass door open and that she had told him that he could stay with her until March. She denied both assertions. Ten minutes later, defendant called O'Connor again, insisting that O'Connor tell the authorities that she might have left the door open and might have told him that he could stay in the apartment. Defendant stated that he wanted them to be "together on this" so that he could "tell them something, you know, to get me out of trouble." In the face of O'Connor's denials, defendant repeatedly told her that he had been living with her, that his belongings were in the apartment, and that he had not broken in. Defendant pleaded with her to go along with his story. When O'Connor reiterated that she would not lie to the authorities, defendant intimated that O'Connor was mentally unfit because she had not taken her prescribed psychiatric medication. Five days later, defendant called O'Connor for a third time from jail, again asking her whether she was taking her psychiatric medication.

Defendant was charged with three counts of tampering with a witness in violation of ORS 162.285,[1] based on his three phone calls to O'Connor from jail.[2] A jury found defendant guilty on two of those counts, and the court merged the verdicts into a single conviction. At a subsequent sentencing hearing, the state asked the court to impose an upward departure sentence on the tampering conviction, arguing

---

[1] We set out the text of ORS 162.285 later in this opinion.

[2] Defendant also was charged with one count each of first-degree criminal trespass (ORS 164.255) and second-degree criminal mischief (ORS 164.354), for breaking into O'Connor's apartment. He was convicted on both of those counts. Those convictions are not at issue in this case.

that the departure was appropriate under OAR 213-008-0002(1)(b)(B). That rule provides that a court may consider the following aggravating factor in determining whether substantial and compelling reasons exist for a departure sentence:

> "The offender knew or had reason to know of the victim's particular vulnerability, such as the extreme youth, age, disability or ill health of victim, which increased the harm or threat of harm caused by the criminal conduct."

The state contended that, by his phone calls to O'Connor from jail, defendant had exploited O'Connor's psychological frailty in an attempt to induce her to testify falsely. Defendant responded that the state, not the witness, is the "victim" in a witness tampering case and, because O'Connor was not a victim for purposes of OAR 213-008-0002(1)(b)(B), that aggravating factor could not support a departure sentence.

The trial court concluded that both the state and O'Connor were "victims" of the crime of witness tampering for purposes of OAR 213-008-0002(1)(b)(B). The trial court found that the state was particularly vulnerable to defendant's tampering with O'Connor because O'Connor was "so much under the sway of the tamperer" and because defendant knew that it would be difficult for the state to convict defendant of the charge without O'Connor's cooperation. In addition, the trial court found that O'Connor was also a victim of that crime

> "because she suffered psychological and social harm as a result of [defendant's] attempts to pressure her. In both the jail telephone calls and her trial testimony, Ms. O'Connor was obviously distraught over [defendant's] efforts to pressure and manipulate her. Based on years of manipulating and taking advantage of Ms. O'Connor, [defendant] knew of her particular vulnerability. This vulnerability increased the threat of harm to which Ms. O'Connor was subject, both in the short term (being successfully manipulated into testifying falsely) and in the long term (continuing in the abusive relationship with [defendant])."

Although the trial court did not expressly identify O'Connor's "particular vulnerability," it is clear from the

arguments before the trial court that the court was refer-
ring to O'Connor's physical and mental health issues.

Defendant appealed the trial court's imposition of
the upward departure sentence to the Court of Appeals,
arguing that neither the state nor O'Connor were partic-
ularly vulnerable victims of the crime of tampering with a
witness. The Court of Appeals determined that defendant's
view of the definition of "victim," which looked beyond the
words of the sentencing guidelines to the elements of the
offense for which he was being sentenced, was too narrow
and that O'Connor was a "vulnerable victim" within the
meaning of that phrase in OAR 213-008-0002(1)(b)(B).
*State v. Lykins*, 259 Or App 475, 479-81, 314 P3d 704 (2013).
The Court of Appeals relied on a case presenting a similar
issue that it recently had decided, *State v. Teixeira*, 259 Or
App 184, 313 P3d 351 (2013). In *Teixeira*, the court had con-
cluded that interpreting the word "victims" in OAR 213-008-
0002(1)(b)(G)[3] to mean only the victims of the substantive
statute defining the relevant offense would be incorrect
because it would render that rule inapplicable to entire cate-
gories of offenses in which the defendant's conduct—although
subject to only a single conviction—in fact, resulted in injury
to multiple persons. *Teixeira*, 259 Or App at 192. Based on
the text, context and legislative history of the rule, the court
held instead that, for purposes of the rule, a "victim is a
person who is directly, immediately, and exclusively injured
by the commission of the crime—not persons injured only
by subsequent, additional criminal conduct." *Lykins*, 259 Or
App at 479 (quoting *Teixeira*, 259 Or App at 199).

The Court of Appeals applied that understanding of
the term "victim" to the facts of this case. The court noted
that the trial court had ruled that O'Connor was a victim
of witness tampering because she suffered psychological
and social harm from defendant's attempts to pressure her
and her vulnerability increased the threat of harm to her.
*Lykins*, 259 Or App at 479. The court concluded that those
facts demonstrated that O'Connor was "directly, imme-
diately, and exclusively injured by the commission of the

---

[3] OAR 213-008-0002(1)(b)G) sets out as an aggravating factor the fact the
"[t]he offense involved multiple victims or incidents."

crime" and, therefore, that she was a "victim" as that word is used in OAR 213-008-0002(1)(b)(B). *Id*. at 480.

The Court of Appeals continued its analysis by noting that an upward departure sentence is appropriate under OAR 213-008-0002(1)(b)(B) only when the trial court's findings of fact and its reasons justifying the departure are supported by evidence in the record and constitute a substantial and compelling reason for departure as a matter of law. It then considered whether the trial court's reasoning met that standard in this case. *Id*. The court stated that evidence that defendant and O'Connor were in an intimate relationship when defendant assaulted her, and that he questioned her mental health when he later contacted her from jail in an effort to persuade her to lie to police, established that O'Connor was particularly vulnerable. *Id*. Moreover, the court stated, defendant's comments about O'Connor's mental health and medication established that defendant knew about O'Connor's vulnerability. *Id*. at 480-81. For those reasons, the court concluded that the trial court's findings were supported by the evidence and constituted substantial and compelling reasons to impose a departure sentence.[4] *Id*. at 481.

On review, defendant argues that the word "victim" in OAR 213-008-0002(1)(b)(B) is a legal term of art, and, although it is not defined in the rule, the context of the rule and the legislative history demonstrate that the drafters intended it to mean the victim of the crime for which the defendant is being sentenced. Defendant contends that the crime for which he was being sentenced—tampering with a witness—is a crime against the state and that O'Connor was not a victim of that crime. Therefore, according to defendant, the trial court erred in imposing a departure sentence based on the vulnerable victim aggravating factor.

The state, for its part, concedes that O'Connor was not a victim of the crime of tampering with a witness.[5]

---

[4] In light of that conclusion, the court did not address whether the state also was a vulnerable victim.

[5] In addition, while refusing to concede that the *state* can never be a "vulnerable victim" for purposes of OAR 213-008-0002(1)(b)(B), the state declines to argue that it was a particularly vulnerable victim in this case. We therefore do not reach that issue.

However, the state contends that the word "victim" in OAR 213-008-0002(1)(b)(B) does not narrowly refer to the victim of the crime for which the defendant is being sentenced, but applies more broadly to anyone who was "directly harmed by the commission of the crime." In the state's view, because O'Connor was directly harmed by defendant's commission of the crime of tampering with a witness, the trial court correctly imposed an upward departure sentence based on the vulnerable victim aggravating factor.

As a preliminary matter, we accept the state's concession that O'Connor was not a victim of the crime of tampering with a witness. *See State v. Bea*, 318 Or 220, 224, 864 P2d 854 (1993) (court is not bound by party's concession on a legal question). That crime is described in ORS 162.285, which provides:

"(1)  A person commits the crime of tampering with a witness if:

"(a)  The person knowingly induces or attempts to induce a witness or a person the person believes may be called as a witness in any official proceeding to offer false testimony or unlawfully withhold any testimony; or

"(b)  The person knowingly induces or attempts to induce a witness to be absent from any official proceeding to which the person has been legally summoned.

"(2)  Tampering with a witness is a Class C felony."

Whether the witness tampered with is a "victim" of that crime is a matter of legislative intent. As this court explained in *State v. Glaspey*, 337 Or 558, 564, 100 P3d 730 (2004), to determine the legislature's intent, the court "must focus on the words that the legislature chose to use" in the "specific criminal statute that defines [the] criminal offense for purposes of prosecution."

In *Glaspey*, the defendant was convicted of felony fourth-degree assault under ORS 163.160, after assaulting his wife in front of his two minor children. Under that statute, a person commits the misdemeanor offense of fourth-degree assault if the person "[i]ntentionally, knowingly, or recklessly causes physical injury to another." ORS 163.160(1). The offense is elevated to a felony, however, if

the assault is committed in the immediate presence of or is witnessed by the person's or the victim's minor children. ORS 163.160(3)(c). The state in that case argued that, even though the statute appeared to use the word "victim" to refer to the assaulted person, the court should focus on the ordinary, dictionary definition of the word "victim," which includes persons who suffer all manner of harm, including the psychological harm that the child witnesses would suffer from witnessing an assault. 337 Or at 564. This court disagreed, concluding that the text of the statute could be read sensibly only if the victim of fourth-degree assault is the person directly, physically injured by an assault. *Id.* at 565. Further, the court stated, context—the use of the word "victim" throughout the substantive part of the criminal code—confirmed that interpretation, because,

> "[o]rdinarily, when the term 'victim' is used in a statute that defines a criminal offense, it is used in the precise sense of a person who suffers harm that is an element of the offense."

*Id.*

The tampering statute does not mention a "victim" of that offense, nor does it require evidence of harm to any person as an element of the offense. Rather, the harm that is the focus of the statutory wording is the risk that a witness in an official proceeding will offer false testimony or unlawfully withhold testimony. If a witness were to provide false testimony or withhold testimony, the resulting harm would be to the administration of justice and to the people of the state. A witness tampered with may be affected by the defendant's criminal conduct, but, like the child witnesses in *Glaspey*, that witness does not suffer harm that is an element of the criminal offense.

We also note that the crime of tampering with a witness is not included among the offenses that the criminal code categorizes as "offenses against persons," and is not a "person felony" for purposes of the sentencing guidelines. OAR 213-003-0001(14) (listing "person felonies"). Rather, tampering with a witness is included in the part of the criminal code that sets out "Offenses Against the State and Public Justice," including bribery, ORS 162.015 to 162.025; perjury

and related offenses, ORS 162.065 to 162.085; escape and related offenses, ORS 162.145 to 162.175; failure to appear, ORS 162.193 to 162.205; obstructing governmental administration, ORS 162.225 to 162.385; abuse of public office, ORS 162.405 to 162.425; and interference with legislative operations, ORS 162.455 to 162.465. In all those crimes, the concern is for the protection of the administration of justice. That is a concern that relates to the state, not to an individual who might be affected by the defendant's conduct. For those reasons, we conclude that the witness tampered with—O'Connor in this case—is not a victim of the crime of tampering with a witness.

Before we address whether the word "victim" has a different meaning in the rule that permits a court to impose a departure sentence when a "victim" is "vulnerab[le]," OAR 213-008-0002(1)(b)(B), we first provide, as background, a brief review of the adoption of the sentencing guidelines and the rule governing departure sentences. As this court explained in *State v. Speedis*, 350 Or 424, 426-27, 256 P3d 1061 (2011), before 1989, sentencing courts had considerable latitude in determining appropriate sentences for criminal convictions. That latitude sometimes led to disparate sentences for similarly situated defendants. To provide greater uniformity in sentencing, the Legislative Assembly, in 1987, directed the then recently-created Oregon Criminal Justice Council (the Council) to develop a series of sentencing guidelines. Or Laws 1987, ch 619, § 2. The Council developed the felony sentencing guidelines, which were revised and adopted by the State Sentencing Guidelines Board, and then approved by the legislature in 1989. Or Laws 1989, ch 790, § 87. The sentencing guidelines thus promulgated and adopted prescribe presumptive sentences for most felonies,[6] subject to judicial discretion to deviate from those presumptive sentences for substantial and compelling reasons. OAR 213-002-0001(2) (so stating).

---

[6] The presumptive sentences generally are derived from the seriousness of the current crime and the offender's criminal history. OAR 213-003-0001(16) ("'Presumptive sentence' means the sentence provided in a grid block for an offender classified in that grid block by the combined effect of the crime seriousness ranking of the current crime of conviction and the offender's criminal history or a sentence designated as a presumptive sentence by statute.").

The *Oregon Sentencing Guidelines Implementation Manual* (guidelines manual) contains the official commentary to the guidelines and provides important legislative history to aid our interpretation of the relevant guidelines provisions. Oregon Criminal Justice Council, *Oregon Sentencing Guidelines Implementation Manual* (Sept 1989). As the guidelines manual makes explicit, the drafters intended that presumptive sentences be imposed in all but the most unusual cases: "When a case represents a truly unique set of circumstances, the sentencing judge is free to impose a[n] appropriate sentence, other than the presumptive sentence." *Oregon Sentencing Guidelines Implementation Manual* at 123; OAR 213-008-0001 ("the sentencing judge shall impose the presumptive sentence provided by the guidelines unless the judge finds substantial and compelling reasons to impose a departure"). OAR 213-008-0002 sets out a nonexclusive list of circumstances meeting that standard.[7]

---

[7] OAR 213-008-0002 provides, in part:

"(1) Subject to the provisions of sections (2) and (3) of this rule, the following nonexclusive list of mitigating and aggravating factors may be considered in determining whether substantial and compelling reasons for a departure exist:

"(a) Mitigating factors:

"(A) The victim was an aggressor or participant in the criminal conduct associated with the crime of conviction.

"(B) The defendant acted under duress or compulsion (not sufficient as a complete defense).

"(C) The defendant's mental capacity was diminished (excluding diminished capacity due to voluntary drug or alcohol abuse).

"(D) The offense was principally accomplished by another and the defendant exhibited extreme caution or concern for the victim.

"(E) The offender played a minor or passive role in the crime.

"(F) The offender cooperated with the state with respect to the current crime of conviction or any other criminal conduct by the offender or other person. The offender's refusal to cooperate with the state shall not be considered an aggravating factor.

"(G) The degree of harm or loss attributed to the current crime of conviction was significantly less than typical for such an offense.

"(H) The offender's criminal history indicates that the offender lived conviction-free within the community for a significant period of time preceding his or her current crime of conviction.

"(I) The offender is amenable to treatment and an appropriate treatment program is available to which the offender can be admitted within a reasonable period of time; the treatment program is likely to be more effective than the presumptive prison term in reducing the risk of offender recidivism; and

As discussed, the trial court in this case relied on OAR 213-008-0002(1)(b)(B) to support an enhanced sentence for defendant's conviction of the crime of tampering with a witness. That factor provides a basis for an upward departure sentence when "[t]he offender knew or had reason to know of the victim's particular vulnerability, such as the extreme youth, age, disability or ill health of victim, which increased the harm or threat of harm caused by the criminal conduct." Here, it is undisputed that O'Connor was vulnerable because of her fragile psychological state and that defendant knew of that vulnerability. Thus, as the parties agree, this case turns on whether O'Connor was a "victim" within the meaning of that word in OAR 213-008-0002(1)(b)(B).

The term "victim" is not defined in either the sentencing guidelines or in their authorizing statutes. As the parties acknowledge, the word "victim" has been defined to

_____

the probation sentence will serve community safety interests by promoting offender reformation.

"(J)  The offender's status as a servicemember as defined in ORS 135.881.

"(b)  Aggravating factors:

"(A)  Deliberate cruelty to victim.

"(B)  The offender knew or had reason to know of the victim's particular vulnerability, such as the extreme youth, age, disability or ill health of victim, which increased the harm or threat of harm caused by the criminal conduct.

"(C)  Threat of or actual violence toward a witness or victim.

"(D)  Persistent involvement in similar offenses or repetitive assaults. This factor may be cited when consecutive sentences are imposed only if the persistent involvement in similar offenses or repetitive assaults is unrelated to the current offense.

"(E)  Use of a weapon in the commission of the offense.

"(F)  The offense involved a violation of public trust or professional responsibility.

"(G)  The offense involved multiple victims or incidents. This factor may not be cited when it is captured in a consecutive sentence.

"(H)  The crime was part of an organized criminal operation.

"(I)  The offense resulted in a permanent injury to the victim.

"(J)  The degree of harm or loss attributed to the current crime of conviction was significantly greater than typical for such an offense.

"(K)  The offense was motivated entirely or in part by the race, color, religion, ethnicity, national origin or sexual orientation of the victim.

"(L)  Disproportionate impact (for Theft I under ORS 164.055, and Aggravated Theft I under ORS 164.057)."

mean different things in different legal contexts. For example, in the context of the victim's rights statutes, the term "victim" is defined broadly, as any person who has "suffered financial, social, psychological or physical harm as a result of a crime." ORS 131.007. Similarly, for purposes of the restitution statutes, "victim" is defined to include not only the person against whom the defendant committed the criminal offense, but also any person who "has suffered economic damages as a result of the defendant's criminal activities," including the Criminal Injuries Compensation Account and an insurance carrier, to the extent that either of those entities expended money on behalf of the person against whom the defendant committed the criminal offense. ORS 137.103(4). At the same time, although the legislature did not define the word "victim" for purposes of the statute governing merger of convictions, ORS 161.067(2),[8] this court has held that, in that context, a narrower meaning applies: The word "victim" refers to "the category of persons who are victims within the meaning of the specific substantive statute defining the relevant offense." *Glaspey*, 337 Or at 563.

Because the word "victim" is not expressly defined for purposes of the departure rule, defendant urges us to interpret that word by reference to the substantive offense for which the defendant is being sentenced, as the court did in *Glaspey*. The state, on the other hand, argues that, because neither the guidelines nor OAR 213-008-0002(1)(b)(B) define the term, this court should consider the following ordinary, dictionary definition of the word "victim": "**2 :** someone put to death, tortured, or mulcted by another **:** a person subjected to oppression, deprivation, or suffering *** **4 :** someone tricked, duped, or subjected to hardship **:** someone badly used or taken advantage of[.]" *Webster's Third New Int'l Dictionary* 2550 (unabridged ed 2002) (boldface in original). The state contends that, so defined, "victim" would include not only those persons whom the legislature intended to protect in defining the crime for which the defendant is being sentenced, but also persons whom were collaterally

--------

[8] ORS 161.067(2) provides, in part:

"When the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims."

harmed by the defendant's commission of that crime, such as the witness in the crime of tampering with a witness.

To resolve that interpretive issue, we follow our usual paradigm, which requires us to examine the text and context of the statute, along with any legislative history that the court finds useful. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (explaining that methodology). Although, in this case, we are called upon to interpret an administrative rule and not a statute, the same principles apply. *Wetherell v. Douglas County*, 342 Or 666, 678, 160 P3d 614 (2007) (court's task in construing administrative rules is same as for statutes: to discern meaning of words used, giving effect to intent of body that promulgated rule).

As an initial consideration, we note that departure sentences serve two primary sentencing objectives: "just desserts for the crime of conviction and public safety." *Oregon Sentencing Guidelines Implementation Manual* at 125. Further, as the guidelines commentary states:

> "In the guidelines system, the seriousness of criminal conduct is determined by the crime of conviction. Consequently, a departure sentence is not appropriate for elements of alleged offender behavior not within the definition of the offense of conviction."

*Id.* Consistently with those principles, the factors set out in OAR 213-008-0002 as supporting a departure sentence mitigate and aggravate both the seriousness of the crime for which the defendant is being sentenced and the risk to public safety posed by the defendant. And, to state the obvious, an aggravating factor, by definition, is a circumstance that makes the crime of conviction or the risk to public safety distinctly worse than it usually would be, thereby justifying the enhanced punishment. A purported aggravating circumstance that does not relate directly either to the offense or the offender would not make worse either the seriousness of the crime or the risk to public safety, and would not constitute a substantial and compelling reason to depart from a presumptive sentence. Those considerations suggest a focus on the victim of the crime for which the defendant is being sentenced, rather than on a third party who may be affected

by the defendant's criminal conduct but who has not suffered harm that is an element of the offense.

That initial impression is bolstered by consideration of the text of OAR 213-008-0002(1)(b)(B). First, the aggravating factor described in that rule is that the offender knew or had reason to know of "the victim's" particular vulnerability. As a grammatical matter, the definite article, "the," indicates something specific, either known to the reader or listener or uniquely specified. Rodney Huddleston and Geoffrey Pullum, *The Cambridge Grammar of the English Language* § 6.1, 368-71 (2002). Because the article "the" is used to convey exactly who or what is being referred to, the drafters' choice to use the words "the victim" rather than "a victim" in OAR 213-008-0002(1)(b)(B) suggests an intent to refer to a known class of victims, such as the victim of the crime for which the defendant is being sentenced, rather than indiscriminately to all persons who might be affected by a defendant's conduct. *See State v. Lopez-Minjarez*, 350 Or 576, 583, 260 P3d 439 (2011) (reasoning that legislature's use of definite article showed intent to refer to the particular and known); *Force v. Dept. of Rev.*, 350 Or 179, 189, 252 P3d 306 (2011) (same).

Second, under OAR 213-008-0002(1)(b)(B), the victim's vulnerability must have "increased the harm or threat of harm caused by the criminal conduct." The word "increased" implies that the harm is the same as, but greater in degree than, the harm against which the substantive offense—the offense for which the defendant is being sentenced—protects. And that, in turn, is the harm that the victim of that offense suffered in a particular case.

The state asserts, to the contrary, that the fact that the victim's vulnerability increased the harm or threat of harm caused by the "criminal conduct" supports its interpretation of the word "victim" in OAR 213-008-0002(1)(b)(B) to include any person whom the defendant's acts have harmed. That is so, the state argues, because the phrase "criminal conduct" refers not to the criminal offense itself, but to the defendant's conduct—his or her actions and behavior—that constituted the criminal offense. And, the argument continues, those actions and behavior could harm

others besides the person or entity that suffered the harm that is an element of the offense for which the defendant is being sentenced.

However, the distinction that the state draws—between the criminal offense and a defendant's "criminal conduct" that harms someone—does not bear scrutiny. "Criminal conduct" is not *criminal* conduct unless it violates a criminal statute. That is, a defendant's actions become "criminal conduct" because those actions meet the elements of a criminal offense. And the harm "caused by" that criminal conduct is the harm that the victim of that criminal offense suffers.

Our review of the text of OAR 213-008-0002(1)(b)(B) thus suggests that the drafters intended the word "victim" to mean the person or entity that is the victim of the offense for which the defendant is being sentenced.

The context of OAR 213-008-0002(1)(b)(B) also supports that interpretation. Importantly, nothing in OAR 213-008-0002 suggests that the drafters intended the word "victim" to refer broadly to any person affected by a defendant's criminal conduct. Further, our interpretation of the word "victim" to mean the person who suffered the harm that is an element of the offense for which the defendant is being sentenced is consistent with the use of that word in the other enhancement factors set out in OAR 213-008-0002. The word "victim" appears eight times in the 22 mitigating and aggravating factors listed in that rule. In all but two of those instances, the text of the provision can be read sensibly only if the word "victim" refers to the victim of the offense for which the defendant is being sentenced.[9]

In addition, OAR 213-008-0002(1)(b)(C) provides for a departure sentence when there has been a "[t]hreat of

---

[9] The following are a few illustrative examples. OAR 213-008-0002(1)(a)(A) provides as a mitigating factor, that "[t]he victim was an aggressor or participant in the criminal conduct associated with the crime of conviction." OAR 213-008-0002(1)(a)(D) states, also as a mitigating factor, that "[t]he offense was committed by another and the defendant exhibited extreme caution or concern for the victim." OAR 213-008-0002(1)(b)(I) provides, as an aggravating factor that, "[t]he offense resulted in permanent injury to the victim." OAR 213-008-0002(1)(b)(G) lists as an aggravating factor that "[t]he offense involved multiple victims or incidents."

or actual violence *to a witness or victim.*" According to the guidelines commentary, that factor is intended to be used "when the offender seeks to avoid prosecution by threatening or harming *a witness* or *the victim.*" *Oregon Sentencing Guidelines Implementation Manual* at 130 (emphasis added). The broad definition of "victim" that the state advances would subsume a witness who is harmed or threatened with harm, making the reference to "a witness" in that departure factor surplusage. Rather, the distinction between "a witness" and "the victim" in the commentary textually signals the drafters' understanding that the word "victim" in that provision refers narrowly to the victim of the crime for which the defendant is being sentenced.[10]

Because, in many of the departure factors enumerated in OAR 213-008-0002, the word "victim" refers narrowly to the person whom the legislature intended to protect in defining the crime of conviction, and not more broadly to other persons collaterally harmed by a defendant's commission of the crime, we infer that the drafters intended that word to mean the same thing in OAR 213-008-0002(1)(b)(B). Ordinarily, we assume that the use of the same term throughout a statute indicates that the term has the same meaning throughout that statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993); *Tharp v. PSRB*, 338 Or 413, 422, 110 P3d 103 (2005) ("When the legislature uses the identical phrase in related statutory provisions that were enacted as part of the same law, we interpret the phrase to have the same meaning in both statutes."). Thus, because we conclude that the word "victim" in many of the enhancement factors set out in OAR 213-008-0002 means the victim of the offense for which the defendant is being sentenced, and because there is no indication in the rule that the legislature intended that word to have different meanings in different parts of the rule, we conclude that that word has the same meaning throughout that rule, including in OAR 213-008-0002(1)(b)(B).

---

[10] Apart from OAR 213-008-0002(1)(b)(B), at issue here, the other aggravating factor that arguably is ambiguous as to whom the word "victim" refers is OAR 213-008-0002(1)(b)(A), "[d]eliberate cruelty to victim."

The state urges the court to consider the rule's enactment history, which, it contends, supports its interpretation of the word "victim." In particular, the state argues that the commentary to OAR 213-008-0002 in the *Oregon Sentencing Guidelines Implementation Manual* reveals that the list of enumerated departure factors was intended to be only a starting point and, indeed, that the examples in the commentary of how certain departure factors might apply show an intent to permit judges to impose departure sentences based on facts that are not elements of the crime for which the defendant is being sentenced. Specifically, the state points to the commentaries to OAR 213-008-0002(1)(a)(E) (the offender played a minor or passive role in the offense) and OAR 213-008-0002(1)(a)(G) (the degree of harm or loss attributable to the current crime of conviction was significantly less than typical for such an offense). In the first example, the commentary states that, in sentencing an offender convicted of drug delivery, the judge may conclude that an offender's role in the drug distribution is minor (and impose a downward departure sentence) if the offender thought he was transporting marijuana but was, in fact, transporting heroin. *Oregon Sentencing Guidelines Implementation Manual* at 128. Yet, as the state explains, the offender in that example has not literally taken a "minor or passive role" in the drug delivery; rather, he was the primary actor. Similarly, in the second example, the commentary states that, in sentencing an offender convicted of first-degree burglary for stealing a bicycle tire from an unlocked garage attached to an occupied residence, a judge may conclude that the conduct is significantly less serious than a typical burglary, where an offender might break into the victim's actual living quarters to steal more valuable property or to commit an assault. *Id*. at 129. However, as the state explains, the degree of actual loss or harm in both scenarios is the same, because a burglary is complete at the time of the entry and does not require that the occupants be subjected to any actual harm or loss. Thus, according to the state, those examples show that the mitigating and aggravating factors set out in OAR 213-008-0002 were designed to characterize the offender's overall culpability; they were "not intended to be constrained by the precise elements that make the conduct a crime in the first place."

In our view, those examples do not shed light on the meaning of the word "victim" in OAR 213-008-0002 generally, or in OAR 213-008-0002(1)(b)(B) in particular. Moreover, the state has pointed to nothing in the commentary that persuades us that the drafters intended the word "victim" in that rule to refer to anyone other than the victim of the offense for which the defendant is being sentenced. Rather, as we have explained, to the extent that the legislative history aids in determining the drafters' intended meaning of the word "victim," it suggests an intent to refer only to the victim of the offense for which the defendant is being sentenced.

We therefore conclude that, for purposes of OAR 213-008-0002(1)(b)(B), which permits a trial court to enhance a defendant's sentence when the defendant "knew or had reason to know of the victim's particular vulnerability, *** which increased the harm or threat of harm caused by the criminal conduct," the term "victim" has the same meaning as it has in the relevant statutory provision defining the offense for which the defendant is being sentenced. In this case, defendant was being sentenced for the offense of tampering with a witness in violation of ORS 162.285. As we have explained, O'Connor was not a victim of that crime; it follows that the trial court erred in imposing a departure sentence for defendant's conviction of that offense based on OAR 213-008-0002(1)(b)(B).

The decision of the Court of Appeals is reversed. The sentence imposed by the circuit court is vacated, and the case is remanded to the circuit court for resentencing.