No. 12　　　　　April 10, 2025　　　　　389

IN THE SUPREME COURT OF THE
STATE OF OREGON

CONTINENTAL CASUALTY COMPANY
and Transportation Insurance Company,
*Petitioners on Review,*

*v.*

ARGONAUT INSURANCE COMPANY et al,
*Defendant,*

*and*

INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA,
*Defendant-Respondent,*

*and*

EMPLOYERS COMPANY OF NORTH AMERICA,
*Respondent on Review.*

INSURANCE COMPANY OF NORTH AMERICA,
*Third-Party Plaintiff,*

*v.*

ARGONAUT INSURANCE COMPANY et al.,
*Third-Party Defendants.*

(CC 16CV14319) (CA A176763) (SC S071094)

En Banc

On review from the Court of Appeals.*

Argued and submitted January 28, 2025.

Laurie J. Hepler, Greines, Martin, Stein & Richland, LLP, San Francisco, California, argued the cause and filed the briefs for petitioners on review. Also on the briefs was H. Matthew Munson, Selman, Leichenger, Edson, Hsu, Newman, Moore, LLP, Seattle, Washington.

_____

* Appeal from Multnomah County Circuit Court, David F. Rees, Judge. 331 Or App 38, 545 P3d 173 (2024).

David C. Linder, St. Paul, Minnesota, argued the cause for respondent on review. Carter M. Mann, Carter M. Mann, AAL, Portland, filed the brief for respondent on review. Also on the brief was David C. Linder.

Cameron Zangenehzadeh, Stoel Rives LLP, Portland, filed the brief for *amici curiae* Schnitzer Steel Industries, Inc., and MMGL, LLC.

Thomas M. Christ, Sussman Shank, LLP, Portland, Oregon, filed the brief for *amicus curiae* Century Insurance Company.

GARRETT, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed, and the case is remanded to the circuit court for further proceedings.

**GARRETT, J.**

The issue before this court arises out of an insurance contribution action under the Oregon Environmental Cleanup Assistance Act (OECAA), ORS 465.475 to 465.484. The parties are insurers who, at various times relevant on review, issued comprehensive general liability (CGL) insurance policies to Schnitzer Steel Industries, Inc., and Schnitzer Investment Corporation (together, Schnitzer). Schnitzer is among the entities named by the federal government as potentially responsible for the contamination of the Portland Harbor Superfund Site. Continental Casualty Company and Transportation Insurance Company (together, Continental) paid Portland Harbor-related defense costs on behalf of Schnitzer and then sought contribution under the OECAA from Schnitzer's other insurers, including, as relevant here, Employers Insurance Company of Wausau (Wausau) and Century Indemnity Company (Century).[1]

After Continental brought this contribution action, Wausau entered into a settlement agreement with Schnitzer. Wausau then sought a ruling from the trial court that, under a provision of the OECAA, the settlement extinguishes any obligation of Wausau to contribute to Continental. The trial court disagreed with that reading of the OECAA and ruled that Wausau was still liable for contribution. A divided panel of the Court of Appeals reversed. *Continental Casualty Co. v. Argonaut Ins. Co.*, 331 Or App 38, 545 P3d 173 (2024). We allowed Continental's petition for review and now reverse the decision of the Court of Appeals.

## I.   BACKGROUND

We take the pertinent facts, which are not disputed, from the record and the parties' briefs on review. In 2000, the United States Environmental Protection Agency (EPA) designated a 10-mile stretch of the Willamette River as the Portland Harbor Superfund Site pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 USC chapter 103. CERCLA creates strict and joint and several liability for categories of parties involved

---

[1]   Century has since reached a settlement with Continental and has been dismissed from this case.

in industrial activities that contribute to releases of hazardous waste at a Superfund site. 42 USC § 9607. The EPA has identified numerous parties involved in industrial operations along that stretch of the river as "potentially responsible" under federal law because their activities over the years—or activities on their properties—have been potential sources of releases of contaminants into the river.

In around 2000, the EPA identified Schnitzer as a potentially responsible party, resulting from scrap metal recycling and ship-dismantling activities on properties that it owned or leased to tenants. Schnitzer tendered its legal defense to its CGL insurers, including Continental, Wausau, and Century. Continental, Wausau, and Century each agreed to defend Schnitzer subject to reservations of rights, with Continental—as the insurer with the greatest number of policies and the largest available limits—taking the lead under a temporary cost-sharing arrangement. Under that arrangement, Continental agreed to pay 70 percent of the defense costs incurred, Wausau agreed to pay 20 percent, and Century agreed to pay 10 percent.

In 2003, the Portland law firm that had been defending Schnitzer in the Portland Harbor matter developed a conflict of interest and determined that it could no longer continue the representation. After determining that there were no other suitable local firms, Schnitzer selected a Los Angeles-based law firm to represent it. The insurers objected, because the Los Angeles firm had billing rates much higher than the Oregon firms that Continental had proposed as defense counsel. Ultimately, Schnitzer and the insurers agreed that Schnitzer could retain the Los Angeles firm, but the insurers would reimburse Schnitzer only at the lower hourly rate charged by the Oregon firms that Continental had proposed, with Schnitzer reserving the right to seek complete reimbursement at a later date.

From approximately 2003 to 2014, Continental, Wausau, and Century generally paid Schnitzer's legal fees and costs incurred in the Portland Harbor matter at reduced hourly rates, splitting those bills as set out in the cost-sharing agreement—70 percent for Continental, 20 percent for Wausau, and 10 percent for Century.

In 2010, Schnitzer filed a breach of contract action against Continental in the United States District Court for the District of Oregon, seeking to recover past defense costs at the Los Angeles counsel's full rates, as well as future defense costs based on those rates until Continental's policy limits were exhausted. A provision of the OECAA, ORS 465.480(3)(b), permits an insured to choose one of its general liability policies to respond to the entire loss if not all policies are required to satisfy the insured's claim. The insurer holding that policy is referred to as the "target" or the "targeted insurer." Schnitzer had identified Continental as its target, and, in the federal breach of contract action, it sought all of its unpaid defense costs, including the deficit in legal fees paid by the insurers at lower hourly rates than charged by the Los Angeles firm, and a declaration that Continental was to pay 100 percent of Schnitzer's Portland Harbor defense costs going forward, until its policy limits were exhausted.

The federal district court case went to trial in 2014. A jury found that Schnitzer had been justified in hiring the Los Angeles firm and that the higher rates charged by that firm had been reasonable under the circumstances. The district court accordingly granted Schnitzer's petition for fees and awarded Schnitzer approximately $8.6 million, which represented all of the unpaid legal defense costs to that point.[2] The district court also declared that Continental was responsible for all of Schnitzer's defense costs going forward, subject to the policy limits. *Schnitzer Steel Industries, Inc. v. Continental Casualty Corp.*, No 3:10-cv-01174-MO, 2014 WL 6063976 (D Or Nov 12, 2014). The Ninth Circuit affirmed that ruling on appeal. *Schnitzer Steel Industries, Inc. v. Continental Casualty Co.*, No 14-35793, No 15-35101, 2016 WL 3059067 (9th Cir May 31, 2016). By 2018, Continental had paid Schnitzer all the legal defense costs required by the federal judgment. In addition, as required by the declaratory judgment portion of the order, Continental continued to pay Schnitzer's reasonable and necessary defense costs.

---

[2] Continental also was ordered to pay prejudgment interest in the amount of $2,812,185 and attorney fees in the amount of $3,756,037, which meant that the total judgment in Schnitzer's favor was over $15 million.

The OECAA allows a targeted insurer to seek contribution from the other insurers for amounts that it has paid on an environmental claim, including both defense and indemnity costs. ORS 465.480(3)(a) - (b); ORS 465.480(4); ORS 465.480(5). In 2016, Continental exercised that right and filed suit against the other insurers, including Wausau and Century, seeking contribution for the costs that it had incurred and would incur in defense of Schnitzer's potential liability for the Portland Harbor cleanup.

In 2019, while that contribution suit was pending, Wausau entered into a settlement agreement with Schnitzer purporting to release Wausau from all claims related to the Portland Harbor matter, including Wausau's liability for all unpaid defense costs as well as future defense and indemnity costs.[3] That agreement was expressly conditioned on Wausau securing judicial dismissal of Continental's contribution action against Wausau. In that regard, Wausau sought the benefit of ORS 465.480(4)(a), which provides:

> "An insurer that has paid all or part of an environmental claim may seek contribution from any other insurer that is liable or potentially liable to the insured *and that has not entered into a good-faith settlement agreement with the insured regarding the environmental claim.*"

(Emphasis added.)

Wausau moved the trial court to dismiss Continental's contribution suit on the ground that Wausau had entered into a "good-faith" settlement agreement with Schnitzer and that, therefore, under ORS 465.480(4)(a), Continental was no longer allowed to "seek contribution" from Wausau. Continental opposed the motion to dismiss, arguing (1) that ORS 465.480(4)(a) does not bar contribution if the settlement occurs *after* the targeted insurer files a contribution suit; (2) that its contribution rights had effectively "vested" when the federal judgment was entered and Continental paid the claim, and that even a good-faith settlement by another insurer cannot extinguish vested contribution rights; and (3) that the settlement agreement between Wausau and Schnitzer had not been reached in good faith.

---

[3] Around the same time, Century also reached a similar settlement with Schnitzer.

The trial court denied Wausau's motion to dismiss Continental's contribution suit against it. The court stated that it was not resolving the factual issue of whether the settlement between Schnitzer and Wausau was reached in good faith[4] or the legal question of whether, under the statute, a settlement reached *after* the targeted insurer files a contribution suit can bar contribution. However, the court agreed in substance with Continental's second argument. It ruled that, because the federal district court had awarded Schnitzer a judgment for all the unpaid defense costs that Schnitzer had incurred in the Portland Harbor matter and had granted Schnitzer a declaratory judgment that Continental must continue to pay 100 percent of Schnitzer's defense costs in that matter until Continental's policies are exhausted, Schnitzer no longer had a "claim" *against Wausau* that it could have settled for any of the defense costs already paid by Continental. Framed in statutory terms, the court observed that ORS 465.480(4)(a) bars a contribution claim when there has been a good-faith settlement "regarding the environmental claim," and, for purposes of that statute, the "environmental claim" at issue was Schnitzer's claim for defense costs in the Portland Harbor matter. Because Schnitzer had obtained a federal judgment against Continental for all of its past and prospective defense costs in the Portland Harbor matter, Schnitzer had ceased to possess a claim for those costs against Wausau by the time that Schnitzer and Wausau settled. Therefore, the court concluded, those defense costs could not logically be part of Wausau's settlement with Schnitzer and, consequently, could not bar Continental's claim against Wausau for contribution toward the defense costs that Continental had paid on Schnitzer's behalf.[5]

---

[4] In its oral ruling, the trial court stated, "I'm not finding that *** this is a settlement that lacks good faith." However, the court did not go so far as to rule that the settlement was reached in good faith, and the court did not mention good faith in its judgment.

[5] In its written judgment, the court ruled:

"The record establishes that [Schnitzer] do[es] not currently possess a claim for defense costs they have incurred at the Portland Harbor Superfund site, as Schnitzer *** ha[s] obtained a judgment in the United States District Court for the District of Oregon *** against Continental *** under ORS 465.480(3)(b) for all unpaid defense costs Schnitzer *** has incurred at the Portland Superfund Harbor and a declaratory judgment that Continental

The case then proceeded to trial, and, in June 2021, the trial court ruled in Continental's favor. Among other things, the court ordered Wausau to pay Continental approximately $3.6 million in unpaid legal fees and prejudgment interest.

Wausau appealed, assigning error to, as relevant here, the trial court's denial of its motion to dismiss Continental's contribution claim. The Court of Appeals ruled in Wausau's favor, reversing the trial court judgment. The Court of Appeals agreed with Wausau that the trial court had construed the term "the environmental claim" in ORS 465.480(4)(a) too narrowly in ruling that Wausau's settlement with Schnitzer was not "regarding the environmental claim." *Continental Casualty*, 331 Or App at 49. The court concluded that Schnitzer had one environmental claim against Wausau that comprised both defense and indemnity costs and, therefore, Schnitzer continued to have an environmental claim against Wausau to settle. *Id.* Under ORS 465.480(4)(a), Continental was entitled to seek contribution from any insurer that "has not entered into a good-faith settlement agreement with the insured regarding the environmental claim," and, according to the Court of Appeals, the trial court expressly had found that "the settlement does not lack good faith."[6] *Id.* at 51. For those reasons, the Court of Appeals concluded that "Continental was not entitled to seek

---

must continue to pay 100% of defense costs incurred by Schnitzer \*\*\* at the Portland Harbor Superfund site until Continental's policies are exhausted.

"This case is solely about defense costs incurred at the Portland Harbor Superfund site. Thus, for this case 'the environmental claim' for purposes of a contribution bar under ORS 465.480(4) is [Schnitzer's] claim for defense costs at the Portland Superfund Harbor. Because [Schnitzer] ha[s] reduced [its] claim for any such defense costs into a judgment against [Continental] in federal court, [Schnitzer] do[es] not currently possess a claim for defense costs incurred at the Portland Harbor Superfund site against \*\*\* Wausau. Accordingly, \*\*\* Wausau's settlement with [Schnitzer] cannot bar [Continental's] claims for contribution against \*\*\* Wausau toward the Portland Harbor Superfund site defense costs [that Continental] has paid on behalf of [Schnitzer]."

[6] In concluding that the trial court had expressly found that "the settlement does not lack good faith," the Court of Appeals purported to quote from the trial court's judgment. *Continental Casualty*, 331 Or App at 47, 51. However, the trial court's judgment includes no such finding. The Court of Appeals appears to have been quoting from an exhibit to Century's and Wausau's Amended Objections to Continental's proposed judgment, which never became part of the court's judgment.

contribution from Wausau and that the trial court erred in denying Wausau's motion to dismiss." *Id.*

Judge Kamins dissented. She reasoned that "the more logical and equitable construction of ORS 465.480(4) (a) is that an insurer may seek contribution from another insurer who has not, *at the time contribution is sought*, entered into a settlement agreement with the insured." *Id.* at 53 (Kamins, J., dissenting) (emphasis in original). Because Continental had filed its contribution action before Wausau reached its settlement with Schnitzer, Judge Kamins concluded that the settlement could not extinguish Wausau's contribution obligations.

## II.   ANALYSIS

Our analysis of whether Wausau's settlement with Schnitzer extinguished Continental's right to contribution involves interpreting ORS 465.480(4)(a). We do that by considering the text and context of the relevant statutes and, if appropriate, any relevant legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Before we turn to that analysis, we set out a brief overview of the statutory framework.

As this court has explained, the OECAA "was enacted to assure the prompt availability of insurance proceeds due and owing from the insurance companies whose insureds face potential liability for their ownership of or roles at polluted sites in this state." *Allianz Global Risks v. ACE Property & Casualty Ins. Co.*, 367 Or 711, 742-43, 483 P3d 1124, *adh'd to as modified on recons.*, 368 Or 229, 489 P3d 115 (2021) (internal quotation marks omitted). One of the provisions of the statute that is central to achieving that goal is ORS 465.480(3)(a), which is referred to as the "all sums" provision. That statute makes each insurer liable for claims that come within the terms of its policies, regardless of other insurance that may be available:

> "An insurer with a duty to pay defense or indemnity costs, or both, to an insured for an environmental claim under a general liability insurance policy that provides that the insurer has a duty to pay all sums arising out of a risk covered by the policy, must pay all defense or indemnity costs,

or both, proximately arising out of the risk pursuant to the applicable terms of its policy, including its limit of liability, independent and unaffected by other insurance that may provide coverage for the same claim."

In addition, ORS 465.480(3)(b) permits the insured to "choose which of the general liability insurance policies respond to the loss if not all are required to satisfy the insured's claim." The court in *Allianz* explained that those provisions "'transfer[] the risk of an intransigent insurer from the insured to its other insurers, where it is more easily and more fairly borne.'" 367 Or at 743 (quoting brief of *amicus curiae* former Governor Ted Kulongoski). In other words, those provisions free the insured from disputes over allocation of coverage for a claimed environmental liability. However, they burden the targeted insurer with all the initial liability for the claim, regardless of the share that that insurer should be allocated under contract terms and other provisions of the OECAA.

That burden is mitigated by ORS 465.480(4)(a), which gives the targeted insurer the right to seek contribution from the other insurers. To repeat, ORS 465.480(4)(a) provides:

"An insurer that has paid all or part of an environmental claim may seek contribution from any other insurer that is liable or potentially liable to the insured and that has not entered into a good-faith settlement agreement with the insured regarding the environmental claim."

On review, Continental makes two arguments. First, echoing Judge Kamins' dissent, it contends that the legislature intended that only a good-faith settlement that is reached *before* the targeted insurer seeks contribution can bar the targeted insurer's right to contribution. Second, Continental argues that, when the insured secures a final judgment against a targeted insurer for all or part of an environmental claim and the targeted insurer fully satisfies that judgment, no subsequent settlement can bar the targeted insurer's right under ORS 465.480(4)(a) to contribution for amounts it paid under that judgment.

We have noted that the trial court agreed in substance with Continental's second argument and did not address Continental's first argument. The court rejected

Wausau's motion to dismiss Continental's contribution action against it based on the settlement, and it ultimately ordered Wausau to pay Continental approximately $3.6 million in unpaid legal fees and prejudgment interest. The Court of Appeals reversed on the ground that, in its view, the trial court had erroneously determined that the Schnitzer/Wausau settlement was not a settlement "regarding the environmental claim" under ORS 465.480(4)(a). As we will explain, we need not address Continental's first argument, because we conclude that the Court of Appeals' analysis of the meaning of the phrase "regarding the environmental claim" in ORS 465.480(4)(a) is flawed and that Wausau's settlement with Schnitzer does not bar contribution in the circumstances of this case.

There is no dispute that, for purposes of ORS 465.480(4)(a), Continental is "[a]n insurer that has paid all or part of an environmental claim" and that Wausau is an "other insurer that is liable or potentially liable to the insured." It also is not in dispute that, by 2018, when Continental completed payment to Schnitzer for defense costs under the federal judgment, Wausau had not yet entered into a settlement agreement with Schnitzer regarding any environmental claim. Accordingly, Continental at least had the right to contribution for defense costs from Wausau in 2018. The question is whether Wausau's subsequent settlement with Schnitzer extinguished Continental's right to contribution under ORS 465.480(4)(a).

We turn first to the text of that statute. Under ORS 465.480(4)(a), an insurer that has paid "all *or part of* an environmental claim" has a right to contribution. (Emphasis added.) In other words, a targeted insurer that has paid only part of an environmental claim may seek contribution from the other insurers who are also liable in the matter for their share of the part of the claim that the targeted insurer has paid. The term "environmental claim" is defined in ORS 465.475(1) as "a claim *for defense or indemnity* submitted under a general liability insurance policy by an insured facing, or allegedly facing, potential liability for bodily injury or property damage arising from a release of pollutants onto or into land, air or water." (Emphasis added.)

As the emphasized wording states, both a defense claim and an indemnity claim qualify as an "environmental claim." It follows that a targeted insurer, like Continental, that has paid defense costs for its insured has paid "part of an environmental claim" for which, under the statute, it may seek contribution.

The statute provides, in the first clause, that the targeted insurer "may seek" contribution from an insurer "that has not entered into a good-faith settlement agreement with the insured regarding the environmental claim." ORS 465.480(4)(a). Continental argues that the 2019 settlement agreement between Wausau and Schnitzer cannot operate to cut off Continental's right to contribution, because, at the time that Continental sought contribution in 2016, Wausau was not an insurer "that has entered" into a settlement agreement. Wausau, however, observes that the word "seek" is conditional and durational: it means to "ask for" or "to try to acquire or gain." *Webster's Third New Int'l Dictionary* 2055 (unabridged ed 2002). In other words, according to Wausau, Continental may have begun "seeking" contribution before Wausau settled with Schnitzer, but Continental was still seeking contribution at the time of the settlement. In its view, the wording of the statute means that Continental could not continue to "seek" contribution from Wausau once Wausau had settled with Schnitzer, because, after that point, Wausau was no longer an insurer "that has not entered" into a settlement agreement.

We need not resolve the dispute over the meaning of "may seek," because, as we will explain, the statute's reference to "the environmental claim" in the second clause makes clear that Wausau's settlement with Schnitzer does not absolve it of liability to Continental for contribution.

The second clause of ORS 465.480(4)(a) describes which potentially liable insurers a targeted insurer may seek contribution from: any insurer that "has not entered into a good-faith settlement agreement with the insured regarding the environmental claim." The meaning of the term "the environmental claim" has been a source of disagreement in the case. Continental contends that the term "the environmental claim" in the second clause is best understood

in relation to the first clause. That is, Continental was eligible for contribution under the first clause because it had already paid part of "*an* environmental claim"—the part of Schnitzer's environmental claim for defense costs—and, as used in the second clause, "settlement regarding the environmental claim" refers to the environmental claim that Schnitzer had already reduced to a judgment and recovered on. Wausau, for its part, does not make an argument based on the text of ORS 465.480(4)(a). Rather, it contends only that its settlement resolved "its liability for the entirety of the environmental claim" that it owed to Schnitzer and that its good-faith settlement of the entirety of Schnitzer's environmental claim against it extinguished Continental's right to contribution.

To repeat, ORS 465.480(4)(a) provides that an insurer that has paid all or part of "*an* environmental claim" may seek contribution from another potentially liable insurer that has not entered into a settlement agreement "regarding *the* environmental claim." (Emphasis added.) The use of the definite article in the second clause of that paragraph is significant. As we have previously stated, "the use of the definite article 'the' often signifies a narrowing intent, a reference to 'something specific, either known to the reader or listener or uniquely specified.'" *Hickey v. Scott*, 370 Or 97, 107, 515 P3d 368 (2022) (quoting *State v. Lykins*, 357 Or 145, 159, 348 P3d 231 (2015)). In this case, the legislature's choice to use the article "the" in ORS 465.480(4)(a) to refer to a settlement regarding "the environmental claim" suggests an intention to refer to the environmental claim that has already been specified—the environmental claim that has been paid—rather than referring to the entirety of an environmental claim that the insured has against another insurer.

Thus, we understand the first clause to permit an insurer that has paid "all or part of *an* environmental claim" to seek contribution, and, in barring contribution if there has been a settlement "regarding *the* environmental claim," the second use of the term should be understood to refer to the environmental claim that has been paid. An insurer that has paid all of an environmental claim, therefore, would

not be entitled to contribution from another insurer that, by time of the first insurer's payment, had already settled with the insured regarding that same environmental claim. Similarly, an insurer that has paid part of an environmental claim and seeks contribution for the part of the environmental claim that it paid would not be entitled to contribution from another insurer that had entered into a settlement agreement regarding that same part of the environmental claim. In other words, the phrase "the environmental claim" in the second clause means the same environmental claim that is the subject of the contribution action.

That interpretation is consistent with the overall structure of the OECAA, which, as we have explained, furthers the goal of ensuring "the prompt availability of insurance proceeds due and owing" to insureds facing "potential liability for their ownership of or roles at polluted sites in this state," *Allianz*, 367 Or at 742-43, by permitting an insured to target one among multiple insurers for payment of all or part of an environmental claim, while at the same time ensuring fairness to the targeted insurer that has paid a disproportionate share of the claim by providing the targeted insurer with a right of contribution from the other insurers, *id.* at 743-44.

The Court of Appeals rejected that approach, and, specifically, it rejected the notion that the phrase "environmental claim" in the second clause could refer to only part of an environmental claim. The court agreed with Wausau that the phrase "the environmental claim" in the second clause refers to the entirety of the claim that an insured had submitted to an insurer under the insurer's general liability insurance policies for both defense and indemnity, irrespective of the nature of the claim for contribution by the targeted insurer. The court ultimately held that Schnitzer's "settlement with Wausau was a settlement of *an* environmental claim." *Continental Casualty*, 331 Or App at 49 (emphasis added). Thus, the Court of Appeals appears to have reasoned that, even though Continental had paid 100 percent of the outstanding defense costs incurred to that point—including Wausau's share—and even though Wausau could therefore not be liable to Schnitzer for *that part* of the environmental

claim, those sums could still constitute part of the "environmental claim" that Wausau could settle in good faith with Schnitzer. *See id.* at 50. And, according to the Court of Appeals, when Wausau settled that environmental claim, it effectively eliminated Continental's right to contribution for Wausau's share of the defense costs. *Id.* at 51.

We conclude that that interpretation is inconsistent with the text and purpose of ORS 465.480(4)(a). First, it ignores the use of the definite article before the words "environmental claim" in the second clause and holds instead that Schnitzer's settlement with Wausau was "a settlement of *an* environmental claim." *Continental Casualty*, 331 Or App at 49 (emphasis added). That, of course, is true as far as it goes. Schnitzer's settlement agreement with Wausau is a settlement of "an" environmental claim—Schnitzer's environmental claim for indemnity and any defense costs not included in the federal judgment. But, as we have already explained, Schnitzer's settlement with Wausau was not a settlement of *the* environmental claim that Continental, as the targeted insurer, had already paid. Thus, it is not a settlement that extinguishes Continental's right to contribution.

Second, as we have stated, by permitting an insurer that has paid all or part of an environmental claim to bring an action for contribution, ORS 465.480(4)(a) promotes fairness for a targeted insurer that has borne more than its share of the cost of the environmental claim. There is little legislative history on this precise point, but Continental points to one comment by a hearing witness that shows that the legislature intended ORS 465.480(4)(a) to encourage settlement of environmental claims by ensuring that a settling insurer cannot later be sued by a "different insurer seeking to make the settling insurer pay even more." Testimony, Senate Committee on General Government, Consumer and Small Business Protection, SB 814, Mar 22, 2013, Ex 1 (statement of Joan Snyder, counsel to Schnitzer Steel). Permitting an insurer to avoid contribution for one part of an environmental claim by settling another, unrelated part of the environmental claim does not further that goal.

In short, to the extent that Schnitzer recovered the defense costs that had been reduced to judgment against

Continental, Schnitzer had no remaining claim for those costs against Wausau that it could settle.[7] And, in fact, in its brief to this court, Wausau concedes that, when Schnitzer settled with Wausau, it "did not recover for the 'same claim' [it] had litigated against Continental in the federal action." That concession ultimately undermines Wausau's argument because Wausau agrees that Continental's contribution claim to recoup Wausau's share of the defense costs was not the same "environmental claim" that Wausau settled with Schnitzer. Thus, Wausau has not "entered into a settlement agreement with the insured regarding the environmental claim," and Continental's right to contribution is not barred. The Court of Appeals' contrary conclusion was in error.[8]

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed, and the case is remanded to the circuit court for further proceedings.

---

[7] In this respect, our analysis differs slightly from the trial court's. We understand the trial court to have reasoned that the entry of the federal judgment against Continental was sufficient to establish Continental's right to contribution. We need not decide whether that is correct, because, in this case, the judgment not only was entered but was satisfied. Whether or not the existence of the judgment itself was sufficient to extinguish Schnitzer's right to recover those defense costs from Wausau, Schnitzer's actual recovery of those costs from Continental was sufficient.

[8] Wausau asserts that there will be future defense costs that Wausau will owe Schnitzer, once Continental's policies are exhausted, and, therefore, some of Schnitzer's defense costs were properly part of the settlement. As Wausau states in its brief, Schnitzer "retained the right to, and in fact did, settle with Wausau" to resolve Wausau's liability for unpaid defense costs as well as future defense and indemnity costs" relating the Portland Harbor matter. Nothing in this opinion should be understood to preclude Wausau or any of the other insurers from settling with Schnitzer with respect to any part of the environmental claim (other than the claim for defense costs that were reduced to judgment in the federal district court case and paid by Continental) and invoking the bar to contribution set out in ORS 465.480(4)(a).