492 March 13, 2024 No. 173

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TROY DONAVAN BAYLISS,
*Defendant-Appellant.*

Lane County Circuit Court
21CR28429; A177681

Bradley A. Cascagnette, Judge.

Submitted May 25, 2023.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and James Brewer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Inge D. Wells, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

## JACQUOT, J.

Defendant was convicted of one count of driving under the influence of intoxicants (DUII), ORS 813.010, and one count of recklessly endangering another person, ORS 163.195, after an incident in which he crashed his car while driving with his 14-year-old son in the vehicle. In one assignment of error, defendant argues that the trial court erred by denying his motion to dismiss the reckless-endangering charge pursuant to a civil compromise. We affirm.

Defendant was driving with his 14-year-old son in the back seat when he lost control of the vehicle. The car suffered "significant damage" in a single vehicle accident. Defendant showed signs of intoxication at the scene and a breath test indicated a blood alcohol content of 0.25 percent. Neither defendant nor his son suffered physical injuries as a result of the crash. Defendant was charged with DUII and recklessly endangering another person, with his son named as the victim.

Defendant entered into diversion on the DUII charge.[1] Regarding the reckless-endangering charge, defendant filed a motion to dismiss pursuant to a civil compromise under ORS 135.705. The motion contained letters from the victim and the victim's mother, defendant's former spouse, explaining that a letter of apology they had received from defendant was sufficient satisfaction for their injuries, and requesting that the court dismiss the charge.

At a hearing on the motion, the state argued that the charge was statutorily ineligible for civil compromise because the crime was committed "[b]y one family or household member upon another family or household member," as defined in the domestic violence statutes. ORS 135.703(1)(d) (crime of recklessly endangering another person cannot be civilly compromised if committed by one "family or household member, as defined in ORS 107.705," against another). The defense argued that the victim did not fall under ORS 107.705's definition of "family or household member" because he was not an adult. It further contended that, for a variety of reasons, the court should exercise its discretion to accept the compromise.

---

[1] The DUII charge is not at issue on appeal.

        The trial court agreed that the charge was not statutorily excluded from civil compromise as a crime committed by one "family or household member" against another, but it denied the motion for two reasons. First, the court did not believe that the crime of recklessly endangering another person was a charge that could be civilly compromised in and of itself due to a lack of civil remedy available to a victim. Second, as an independent basis, the court would not exercise its discretion to allow the compromise, stating,

        "I think, frankly, the Legislature's incorporation of family or household members is designed in part to deal not only with domestic violence and elder abuse, but just to recognize family dynamics, that the pressure on—especially the pressure on a child to agree with a parent that, 'Oh, I'm okay. I don't want you to get in trouble,' is too extreme, and I don't think it is something that should be allowed to be civilly compromised. And I will not exercise the discretion to allow that to happen in this case.

        "* * * * *

        "Therefore, the request for civil compromise as to Count 2 is denied. Both, one, because I don't think it's eligible; and two, as a separate and independent * * * basis, even if it were, I would not be inclined to exercise the discretion and allow it in this matter as a matter of policy."

        Following a stipulated facts trial, defendant was convicted of one count of recklessly endangering another person and sentenced to 24 months of bench probation, a 90-day driver's license suspension, and fines.

        On appeal, defendant argues that the trial court erred by refusing to accept the civil compromise for two reasons. First, he argues that the trial court was incorrect when it determined that the crime of recklessly endangering another person, ORS 163.195, is not subject to civil compromise, and that victims do have a remedy by civil action for negligent infliction of emotional distress. Second, defendant argues that, because the legislature declined to create a categorical exclusion to civil compromises between parents and their minor children when enacting ORS 135.703(1)(d), the trial court could not exercise its discretion to reject the civil compromise in this case on the ground that, because he was

a minor compromising a claim against his parent, defendant's son may have felt unduly pressured to compromise the claim based on a desire to keep his father from getting in trouble.

The state responds that defendant failed to preserve his argument that the court was erroneously creating a categorical exclusion as opposed to exercising its discretion in the circumstances of this particular case and, regardless, that the trial court has very broad discretion when deciding whether to deny a motion for civil compromise and did not abuse that discretion in this case. Alternatively, the state argues that we should affirm on an alternative basis that it did not raise below, namely, that the acknowledgements made by the victim and his mother were insufficient because the victim, as a minor, lacked capacity to make an acknowledgement, and his mother could not contract on his behalf. *See State v. Fitterer*, 109 Or App 541, 544, 820 P2d 841 (1991), *rev den*, 313 Or 75 (1992) (neither a minor child nor the child's custodial parent has both capacity and authority to enter into a civil compromise).

As explained below, we conclude that defendant adequately preserved his argument, and that the trial court did not abuse its discretion. Because we affirm on the ground that the trial court did not abuse its discretion, we need not, and do not, consider whether there is a civil remedy available to a victim of the crime of recklessly endangering another person, nor do we consider the state's proffered alternative basis for affirmance.

As an initial matter, we address the state's preservation argument. The state argues that, because defendant did not raise his objection to the trial court's refusal to allow compromises between minor children and their parents at the hearing, he failed to preserve the issue for appeal. However, defendant asserted generally that the court should allow the compromise and that, for a variety of reasons, the court should exercise its discretion to accept the civil compromise and, accordingly, dismiss the case. As to the court's specific reasoning regarding crimes by parents against minor children, there was no indication before the court's ruling that it intended to deny the motion on those

grounds. Given that, defendant had no reason or opportunity to object to the trial court's reasoning until after it had announced its ruling. "Once a court has ruled, a party is generally not obligated to renew his or her contentions in order to preserve them for the purposes of appeal." *State v. Walker*, 350 Or 540, 550, 258 P3d 1228 (2011). Defendant adequately raised the issue by advocating for the court to exercise its discretion and accept the compromise; he had no obligation to renew his objection after the ruling based on the court's reasoning, which, until the ruling, he had no reason to anticipate.

Thus, we turn to the merits of defendant's argument.

ORS 135.705(1)(a) provides:

> "If the person injured acknowledges in writing, at any time before trial on an accusatory instrument for the crime, that the person has received satisfaction for the injury, the court may, in its discretion, on payment of the costs and expenses incurred, enter a judgment dismissing the accusatory instrument."

When determining whether to accept a civil compromise, the trial court must engage in a two-step process. First, it must determine whether the claim is one that may be compromised or, in other words, whether it has the statutory authority to accept the compromise. Second, if it does have the authority, it must exercise its discretion to decide whether to accept the proposed compromise and dismiss the charge.

Beginning with step one, a trial court has statutory authority to dismiss a charge based on a proposed civil compromise only if four conditions outlined by ORS 135.703 and ORS 135.705(1)(a) are met:

> "(1) the defendant is charged with a crime punishable as a misdemeanor, (2) the person injured by the act constituting the crime has a remedy by civil action, (3) the person injured acknowledges in writing before trial that the person has received satisfaction for the injury, and (4) the defendant pays costs and expenses incurred."

*State v. Ferguson*, 261 Or App 497, 500, 323 P3d 496 (2014). In addition to those requirements, the legislature has placed

limitations on when charges may be compromised. As relevant here, ORS 135.703(1) limits the availability of civil compromise in some circumstances, including when certain crimes are committed by "one family or household member upon another family or household member," as defined in the domestic violence statutes. ORS 135.703(1)(d). Whether a trial court correctly determined that a charge is or is not statutorily barred from a civil compromise is a question of law that we review for legal error. *See State v. Aguilera*, 324 Or App 478, 479, 526 P3d 1206 (2023).

At step two, once the trial court has determined that the charge is statutorily eligible and it has the authority to accept a civil compromise, it must exercise its discretion to decide whether to allow the proposed compromise. We review a trial court's refusal to dismiss a charge based on civil compromise for an abuse of discretion. *See State v. Orians*, 335 Or 257, 259, 66 P3d 468 (2003) (so reviewing). Discretion is the authority of a trial court to choose among several legally correct outcomes. *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000). "If the trial court's decision was within the range of legally correct discretionary choices and produced a permissible, legally correct outcome, then the trial court did not abuse its discretion." *Id.* However, if a trial court's "purported exercise of discretion flows from a mistaken legal premise, its decision does not fall within the range of legally correct choices and does not produce a permissible, legally correct outcome." *State v. Romero*, 236 Or App 640, 643-44, 237 P3d 894 (2010).

A trial court may dismiss a case pursuant to a civil compromise only after the victim has acknowledged complete satisfaction, but, once the victim has so acknowledged, "[t]he only question that remain[s] [is] whether public policy would be better served by proceeding with the prosecution or dismissing the case \*\*\*. At this stage it [is] a public policy question appropriate for the exercise of judicial discretion." *State v. Martindale*, 30 Or App 1127, 1131, 569 P2d 659 (1977), *rev den*, 281 Or 1 (1978). The legislature has "vested the power to compromise solely in the court's discretion." *State v. Dumond*, 270 Or 854, 858, 530 P2d 32 (1974). The statute's "grant of discretion is not limited in any

explicit way, once the parties satisfy the statutory formalities." *Orians*, 335 Or at 262. Rather, "[t]he trial court is left to take into consideration virtually any factor that it deems relevant (short of considerations such as race, religion, or the like, which cannot be given decisional weight for constitutional reasons)." *Id.*

However, there are some limitations on the court's discretion. For example, as noted above, a trial court abuses its discretion if it bases its decision on constitutionally protected characteristics such as race or religion. *Id.* A trial court abuses its discretion when it attempts to direct the terms of a compromise or refuses to accept the compromise because it believes the injured party is requesting too much. *Martindale*, 30 Or App at 1130-31. Additionally, we have concluded that a trial court abused its discretion when it promised that it would accept the compromise if two other events occurred, then refused to honor the compromise when those events did occur. *Orians*, 335 Or at 264-65.

Here, defendant argues that the trial court abused its discretion when it rejected the civil compromise in his case based on the relationship between the minor victim, his son, and defendant. He argues that the court's discretion could not include that consideration because the legislature necessarily considered and declined to create a categorical exclusion to civil compromises between minor children and their parents when it enacted ORS 135.703(1)(d).

Relying on *State v. Schwab*, 95 Or App 593, 771 P2d 277 (1989), defendant argues that once the legislature has made a policy decision about an issue, the trial court cannot use its discretion to override that decision. In *Schwab*, the trial court used its discretionary authority to impose a special condition of probation that required the defendant to submit to searches by his probation officer even if the probation officer did not have the requisite reasonable grounds to believe they would find evidence of a probation violation articulated in the statute. *Id.* at 596. We vacated the decision, concluding that the court could use its discretion to impose "other types of conditions that are not already addressed in the statute," but "[c]onditions that the legislature specifically defined are statutory restrictions to which

a court must conform when imposing probation conditions." *Id.* at 597. Defendant argues that the principle articulated in *Schwab* applies here and, in light of the legislature's enactment of ORS 135.703(1)(d), barred the trial court from relying on his parental status to reject the civil compromise in this case. Assuming without deciding that defendant is correct, we consider the legislative history of ORS 135.703.

As noted above, ORS 135.703(1)(d) provides that the charge of recklessly endangering another person may not be civilly compromised if committed by "one family or household member upon another family or household member, as defined in ORS 107.705." ORS 107.705(4), which provides definitions for the Family Abuse Prevention Act (FAPA), addresses spousal or sexually intimate relationships, as well as relationships between parents and adult children.[2]

Defendant argues that the victim, defendant's minor son, is excluded from this definition because the only subsection that might encompass a parent-child relationship specifies only "adult" persons. We understand defendant's argument to be that because in common language "family or household member" would presumably include parents and their minor children, when enacting ORS 135.703(1)(d) and referencing the definition provided in ORS 107.705(4), the legislature must have considered whether to prohibit compromises between parents and minor children and explicitly decided not to do so. Defendant asserts that the reference to ORS 107.705 in the civil compromise statute, and ORS 107.705(4)(c)'s inclusion of the word "adult" to modify "children," shows that the legislature made a conscious choice

---

[2]  The entirety of ORS 107.705(4) reads:

"Family or household members" means any of the following:

"(a)  Spouses.

"(b)  Former spouses.

"(c)  Adult persons related by blood, marriage or adoption.

"(d)  Persons who are cohabiting or who have cohabited with each other.

"(e)  Persons who have been involved in a sexually intimate relationship with each other within two years immediately preceding the filing by one of them of a petition under ORS 107.710.

"(f)  Unmarried parents of a child."

The term "cohabitate," means a romantic relationship rather than simply living in the same home. *Edwards and Edwards*, 73 Or App 272, 278, 698 P2d 542 (1985).

not to categorically exclude minor children from civilly compromising the charge of recklessly endangering another person. If it had wanted to categorically exclude minor children from civilly compromising reckless-endangering charges against their parents, he asserts, it could have adopted a definition of "family or household member" that includes minor children.

However, the relevant legislative history does not support defendant's position. Instead, it shows that, in including "adult persons related by blood" in ORS 107.705(4)(c) and cross-referencing ORS 107.705 in the civil compromise statute, the legislature was focused exclusively on domestic violence between adults and did not implicitly or explicitly consider whether minor children should be able to civilly compromise offenses committed against them by their parents.

In 1981, the legislature amended the definition of "family and household members" in ORS 107.705 to add "adult persons related by blood or marriage." Or Laws 1981, ch 780, § 1. Prior to the amendment, the definition included only domestic partners such as spouses, former spouses, and persons cohabitating with each other. ORS 107.705 (1979). The addition was intended to address the problem of elderly people being abused by their grown children, which was not previously covered under the statute. Testimony, House Committee on Judiciary, Subcommittee 3, SB 355, June 12, 1981, Ex E (statement of Ruth Gundle, Attorney and litigation coordinator for Oregon Legal Services) ("This bill, if enacted, would also expand the definition of 'family or household members' to include parents and adult children. The purpose of this is to include within the protection of the act elderly people who are physically abused by their adult children."). The legislature included the qualifier "adult" because abuse and issues related to minor children were covered elsewhere in the statutes; it did not want to interfere with child and family services and other agencies that would handle problems with minor children; and some issues would come under the jurisdiction of the juvenile court. Tape Recording, Senate Committee on Justice, SB 355, Mar 3, 1981, Tape 45, Side A (statement of Ruth Gundle, Attorney

and litigation coordinator for Oregon Legal Services); Tape Recording, House Committee on Judiciary, SB 355A, July 9, 1981, Tape 539, Side A (statement of Rep Joyce Cohen) ("[W]e did not tamper with the child abuse statutes here[.]").

In 1991, the legislature added the prohibition on civil compromise of recklessly endangering another person between "family and household members" found in current ORS 135.703. Or Laws 1991, ch 938, § 1. The amendments were intended to eliminate civil compromises in domestic violence cases in order to protect victims and address pressures and coercion within abusive relationships between adults. Testimony, House Committee on Judiciary, Subcommittee on Family, HB 3051, Mar 20, 1991, Ex H (statement of Multnomah County Circuit Court Judge Stephen B. Herrell) ("The original intent behind the civil compromise provision is to substitute a civil remedy for a criminal remedy. In these domestic violence cases no civil remedy ever takes place. In reality, the civil compromise is actually a device misused to talk a fragile victim into dropping prosecution."). Although trial courts "can always say no," civil compromises were being inappropriately used as a docket management tool to get rid of cases, and some judges considered domestic violence a "family problem," not criminal conduct, perpetuating societal acceptance of domestic abuse and failing to punish abusers. Tape Recording, Senate Committee on Judiciary, HB 3051, June 3, 1991, Tape 206, Side B (testimony of Multnomah County Circuit Court Judge Stephen B. Herrell) ("In this instance, I'm asking you to bridle me and my colleagues.").

Defendant's overarching argument appears to be that, because the legislature could have included parent-minor child relationships when creating the statutory limitations to the trial court's authority in ORS 135.703(1)(d) but did not do so, it deprived courts of the discretion to deny civil compromises of those charges based on the victim being defendant's minor child. However, contrary to defendant's assertion that the legislature's use of the FAPA definition of "family and household member" in creating its list of exclusions from civil compromise necessarily shows that it considered compromises between minors and their parents,

the legislative history reveals that no such consideration occurred. FAPA was not intended to cover minor children, and there is no reason to assume that, by adopting the existing FAPA definition, the legislature considered and declined to add minor children and intended to limit trial courts' discretion to reject compromises on those grounds. That is particularly true because, as demonstrated by the legislative history of ORS 107.705 discussed above, legal issues involving minors involve specific considerations inapplicable to adults. *See also Fitterer*, 109 Or App at 544 (minor victim in proposed civil compromise "lacks the capacity" to make an acknowledgment and custodial parent cannot contract on her behalf).

Additionally, defendant's argument is inconsistent with the broad grant of discretion provided to the trial court and conflates step one statutory limitations with step two limitations on the trial court's discretion. If, as defendant's argument ultimately would have it, the trial court may reject compromises based only on grounds explicitly stated in the statutes, the statute's grant of discretion becomes meaningless. In this case, the trial court agreed with defendant that the proposed compromise was not forbidden as a crime committed by one "family or household member upon another," ORS 135.703(1)(d), and then moved to step two to exercise its discretion. Defendant's argument relies upon the legislature's silence as to minors compromising with their parents to show that it intended to limit the trial courts' discretion to reject compromises on that basis. We are not persuaded.

Finally, defendant argues that the trial court abused its discretion by not considering the individual merits of defendant's proposed civil compromise and inquiring whether defendant, in fact, asserted improper pressure on the victim to compromise, and that the trial court may not base its decision on a single factor. These arguments are unavailing, and the reasoning in the authorities cited by defendant to support his position are inapplicable to civil compromises. *See State v. Justice*, 273 Or App 457, 467-68, 361 P3d 39 (2015) (statute providing responsibilities of trial court in plea negotiations requires the court to make an individualized assessment due to obligatory language:

"the trial judge shall give the [plea] agreement due consideration," ORS 135.432(4)); *State v. Harrell/Wilson*, 353 Or 247, 263-64, 297 P3d 461 (2013) (when determining whether to consent to the defendant's exercise of constitutionally protected right to waive a jury trial, "[a]s with any other waiver of a constitutional right," the trial court should have focused on the validity of the defendant's elections using already established factors for constitutional rights waivers).

The trial court in this case determined that justice would be better served by proceeding with the prosecution than by dismissing the case, due to its concerns about the propriety of allowing compromises between minor victims and their parents. Defendant has not established that the trial court's concern about coercive family dynamics was an improper or legally incorrect basis for denying the proposed compromise. The trial court did not abuse its discretion when it denied defendant's proposed civil compromise.

Affirmed.